IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **DR. DEREK MELBY, and DANILO POLICARPIO as individuals and on behalf of all others similarly situated** | § § § § | |
| **Plaintiffs,** | § § | **Case No. 3:17-cv-155** |
| **v.** | § § | |
| **AMERICA'S MHT, INC., SCOTT POSTLE, ACENTIUM CAPITAL, LLC, and CLIFF MCKENZIE** | § § § § | |
| **Defendants.** | § § | |

## CLASS ACTION COMPLAINT

TO THE HONORABLE COURT

Plaintiffs, Dr. Derek Melby and Dr. Danilo Policarpio ("Plaintiffs") by and through their undersigned counsel, hereby file this Class Action Complaint, individually, and on behalf of all others similarly situated—and make these allegations based on information and belief and/or which allegations are likely to have evidentiary support after a reasonable opportunity for further investigation and discovery—against America's MHT, Inc., Scott Postle, Ascentium Capital LLC, and Cliff McKenzie (collectively, "Defendants"), as follows:

### PARTIES

1.     Plaintiff, Dr. Derek Melby is a natural person residing in Fort Mill, South Carolina.

2.     Plaintiff, Dr. Danilo Policarpio is a natural person residing in Venetia, Pennsylvania.

3.     Defendant, America's MHT, Inc. ("MHT") is a corporation existing under the laws of the State of Texas with a principal place of business located at 1575 Heritage Dr., Ste 200 McKinney, TX 75069. MHT has designated, as its Registered Agent for Service, Shelley Molge, America's MHT, Inc., 1575 Heritage Dr., Ste 200, McKinney, TX 75069.

4.     Scott Postle is a natural person who resided in McKinney, Collin County, Texas when Plaintiffs' causes of action accrued.

5.     Defendant, Ascentium Capital, LLC ("Ascentium") is a Delaware limited liability company with a principal place of business located at 23970 Highway 59 North Kingwood, TX 77339. Ascentium has designated, as its Registered Agent for Service CT Corporation System, 1999 Bryan St., Ste. 900, Dallas, TX 75201.

6.     Defendant Cliff McKenzie is a natural person who resided in Collin County, Texas when Plaintiffs' causes of action accrued.

## JURISDICTION & VENUE

7.     This Court has jurisdiction over the subject matter presented by this Complaint because it is a class action arising under the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d), which explicitly provides for the original jurisdiction of the Federal Courts of any class action in which any member of the plaintiff class is a citizen of a state different from any Defendant, and in which the matter in controversy exceeds in the aggregate the sum of $5,000,000.00, exclusive of interest and costs.

8.     Plaintiffs allege that the total claims of the individual members of the Plaintiff Class in this action are in excess of $5,000,000.00 in the aggregate, exclusive of interest and costs, as required by 28 U.S.C. § 1332(d)(2), (5). As set forth below, Plaintiffs are citizens of Pennsylvania and South Carolina, and Defendants, including MHT, Scott Postle, and Cliff McKenzie can be considered citizens of Texas. Therefore, diversity of citizenship exists under CAFA and diversity jurisdiction, as required by 28 U.S.C. §§ 1332(a)(1), (d)(2)(A). Furthermore, Plaintiffs allege on information and belief that more than two-thirds of all the members of the proposed Plaintiff Class in the aggregate are citizens of a state other than Texas, where this action is originally being filed,

and that the total number of members of the proposed Plaintiff Class is greater than 100, pursuant to 28 U.S.C. § 1332(d)(5)(B).

9.      On information and belief, Defendants have effectively engaged in a Ponzi scheme that has been perpetrated on Plaintiffs and members of the putative class throughout the United States. Defendants' unlawful deceptive trade practices and other torts and violations of law have taken place in this judicial district. All Defendants are residents of Texas, and more than one of them is a resident of this District.  Defendants are subject to this Court's personal jurisdiction with respect to this action, and accordingly, venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391(b)(1) and (2).

## BACKGROUND

10.      Derek Melby and Danilo Policarpio, and those similarly situated, are medical doctors practicing throughout the United States.

11.      On information and belief, MHT and its officers and sales staff are currently in the business of operating a scheme to defraud physicians across the United States.

12.      MHT purports to operate a network of patient-recruitment coordinators and other administrative staff, as well as nurse practitioners in cities throughout the United States who perform visits to patients in their homes.

13.      MHT preys on physicians by presenting a business model that, if it were truly put into practice, could have positive effects for patients, physicians, nurse practitioners, and the health care industry generally.

14.      On information and belief, MHT offers physicians the opportunity to expand their practice with minimal investment and minimal time commitment based on the premise that the physicians would supervise nurse practitioners making house calls to patients in their region.

15.     MHT represents to physicians that it sells a Medical Home Team Services Program ("MHT Program"), through which physicians can supervise, in the physician's region, a practice that is handled solely by MHT, from marketing to patient care to billing to administrative management.

16.     MHT represents that it will facilitate most every aspect of the practice in full compliance with all applicable rules and regulations, and the practice will generate a profit for the physicians of hundreds of thousands of dollars per year.

17.     Officers and employees of MHT, including Scott Postle, Judy Postle, Nhue Ho, David Fronk, and Bradley Leire, acting within the course and scope of their employment and in their capacity as officers, principals, or employees of MHT, have made specific representations regarding the nature and quality of MHT's management services and the expected profits that the physicians' practices will achieve. These officers, principals, and employees have provided written materials and verbally made representations regarding all aspects of the MHT Program. The representations of Scott Postle, Judy Postle, Nhue Ho, David Fronk, and Bradley Leire were made knowingly with the specific intent that potential customers, like the Plaintiffs and those similarly situated, would rely on them and acquire MHT's management services.

18.     However, MHT often fails to provide the patient-recruitment coordinators, administrative staff, nurse practitioners, or software necessary for the out-patient practices to even begin operating.

19.     MHT's failures in that regard not only establish their breaches of the agreements with the physicians, but also establish that MHT's revenue stream is not based on income derived by patient care. Instead, it is solely based on the sale of software "licenses" to the physicians.

20.     The sales of "licenses" were in fact a guise for a sale of a worthless franchise.

21.     On information and belief, MHT has always operated at a loss. It survives only on the sale of expensive licenses to physicians, who are then encouraged, through referral bonuses, to enlist additional physicians to purchase more licenses. Indeed, Scott Postle has stated to the Plaintiffs and those similarly situated that MHT cannot survive unless it continues to sell hundreds of additional licenses.

22.     Further, on information and belief, MHT offers to *simplify* the process for the physicians by coercing them to permit MHT to create legal entities in the names of the physicians and to open bank accounts in the names of those entities. MHT represented to the Plaintiffs and those similarly situated that this is part of MHT's management services.

23.     Although the new entity is purported to be solely owned by the physician, Plaintiffs and those similarly situated have no actual relationship with or control over these entities ("Artificial LLCs") created and operated by MHT.

24.     MHT maintains absolute control over the Artificial LLCs through a related entity, Accountable Practice Mgmt, Inc. ("APM"), which is named as "manager" of each new entity. MHT then causes the Artificial LLCs to enter into various agreements with MHT, including a Management Service Agreement ("MSA") and separate license agreements ("License Agreements"). In consideration for providing the management services, MHT charges and is paid a management fee and license fees from the newly created Artificial LLC.

25.     Even worse, MHT surreptitiously—and in the name of the Artificial LLCs—incurs substantial indebtedness through a financial vehicle custom-created by Ascentium that enables and assists MHT in defrauding these physicians.

26.     On information and belief, MHT either pressures the physicians to sign, or without any informed consent of the relevant physician signs on behalf of the Artificial LLC, an "Installment

Payment Agreement" with Ascentium. In no case are the physicians' informed of essential elements of the agreement, much less have physicians offered informed consent to any such arrangements.

27.     The Installment Payment Agreement purports to obligate the Artificial LLCs, created by MHT, to make 66 payments to the financial institution for the software that MHT claimed it would provide—but often fails to provide—to the physicians.

28.     On information and belief, MHT further coerced or misled the physicians by representing that MHT would make all payments for the software on behalf of the physician's LLC with a bank account set up for the Artificial LLC by MHT.

29.     However, MHT represented that anti-kickback laws prevented MHT from entering into the Installment Payment Agreements directly with Ascentium. Nevertheless, according to representations from MHT, the physician would not have to make any of the payments to Ascentium. According to MHT, payments to Ascentium would be fully funded by MHT.

30.     Ascentium and defendant Cliff McKenzie, acting within the scope of his employment, custom-created the financial vehicle that MHT used to coerce, mislead, or otherwise fail to properly and lawfully disclose the purported agreements' terms and conditions, specifically including but not limited to the rate of interest. Indeed, MHT, Scott Postle, and Cliff McKenzie, in the scope of his employment with Ascentium, carefully concealed and secreted from Plaintiffs the outrageous and exorbitant rate of interest. In addition, the funds transfers from Ascentium to MHT, that were ostensibly loans to the Artificial LLCS, were broken into four separate funds transfers, each less than $100,000.

31.     MHT, Ascentium, and persons acting on their behalf misrepresented the nature of documents that they presented to Plaintiffs and those similarly situated. On information and belief,

some of the agreements or related documents were executed by MHT without the authorization of the Plaintiffs, including instances in which MHT digitally or manually duplicated the signatures of Plaintiffs and those similarly situated, without the physicians' authorization or informed consent.

32.     Without any knowledge of, and a complete absence of communication by MHT to Plaintiffs, MHT, and persons acting its behalf, and Cliff McKenzie and others acting within the scope of their employment with Ascentium, conspired to and actually transferred funds from Ascentium directly to MHT. The typical amount of the cash transfers for each Artificial LLC totaled three hundred thousand ($300,000.00) dollars, representing four "licenses" per Artificial LLC. The funds were deposited directly into MHT accounts, and MHT and others involved in the scheme promptly absconded with the funds.

33.     Unbeknownst to Plaintiffs, yet with full knowledge of MHT and persons acting on its behalf, Ascentium charged the Artificial LLCs—through MHT's oversight and participation—interest at an exorbitant rate of twenty-four (24%) percent. This information was secreted and concealed from the Plaintiffs and those similarly situated. Specifically, Ascentium did not take any reasonable steps and measures to communicate with the individual doctors who were the victims of the conspiracy and scheme, the interest rates upon which it had conspired with MHT to charge.

34.     Ascentium has claimed that the Plaintiffs and similarly situated persons are somehow liable as guarantors for monies Ascentium sent directly to MHT, ostensibly on the account of the various Artificial LLCs.

35.     The Ascentium Installment Purchase Agreement does not disclose any rate of interest, and MHT has represented to Plaintiffs and those similarly situated that the agreement is not a loan and is not subject to any rate of interest.

36.     MHT continued to pay the monthly notes to Ascentium and expanded the scheme dramatically between 2014 through 2016. Essentially, MHT used funds received from the sales of licenses to pay the monthly debt for earlier loans from Ascentium, for which MHT was the sole initial recipient of the funds from Ascentium.

37.     Upon information and belief, when certain, few individual doctors, complained to MHT that MHT had failed to provide the promised services, MHT advised the doctors that it would "resell" those doctors' "licenses" to other unsuspecting class members.  When MHT did so, the scheme was perpetuated, and additional victims were duped.

38.     In early 2016, persons within Ascentium in addition to Defendant Cliff McKenzie began a process of seeking to determine the ultimate ability of the Artificial LLCs to actually make payments.  It confirmed that the Artificial LLCs had either no revenue or income, or the revenue and income for the limited few that had revenue was woefully insufficient to repay the loans. In fact, on information and belief, Ascentium already had this knowledge imputed to it as a result of the direct involvement of its employee, Cliff McKenzie, in the scheme.

39.     In an effort to limit its own risk, Ascentium entered into a written agreement with MHT by which MHT agreed to be principally responsible for the loans if any of the Artificial LLCs failed to fund them.

40.     Upon information and belief, in this agreement, believed to be labeled a "Vendor Agreement," Ascentium agreed to give a discount to MHT for loans that MHT repaid in the amount of 4 percentage points, creating a new interest rate of twenty (20%) percent for MHT's benefit.

41.     Further, upon information and belief, the "Vendor Agreement," is actually and legally a novation of any ostensible loan obligations of the Artificial LLCs and guarantee obligations by the Plaintiffs and those similarly situated. Through that novation, MHT took on responsibility for

the obligations of the Artificial LLCs, for which it should be legally accountable even absent the novation.

42.     Neither MHT nor Ascentium advised Plaintiffs or persons similarly situated of the new secret deal between MHT and Ascentium, including the reduction in the interest Ascentium was charging MHT if it were called upon to pay off loans of the Artificial LLCs.

43.     In addition, MHT, Scott Postle, and Cliff McKenzie in the scope of his employment with Ascentium conspired to place some portion of new licensing loans with financial entities other than Ascentium. Toward that end, MHT and Scott Postle positioned Defendant Cliff McKenzie to aggressively market the placement of new loans, which would also be paid directly to MHT.

44.     Upon information and belief, in addition to his employment with Ascentium, sometime in 2016, MHT began to pay defendant Cliff McKenzie twenty thousand ($20,000.00) dollars per month directly from MHT, as well as an additional exorbitant finder's fee for placing new loans with lenders other than Ascentium. Ascentium either knew or reasonably should have known of the financial relationship between McKenzie and MHT. Because of the conspiracy, Defendant Cliff McKenzie, acting in the scope of employment with Ascentium, received significant funds from the scheme in commissions from Ascentium and MHT alike.

45.     MHT, Scott Postle, and Cliff McKenzie, in the scope of his employment with Ascentium, misrepresented the facts and true intentions of MHT and Ascentium and committed other deceptive trade practices described in this complaint.  In turn, Plaintiffs and those similarly situated received little or nothing of value from MHT.

46.     On information and belief, MHT used the agreements they created or obtained, through coercion, misrepresentation, and other deceptive trade practices from the physicians, to enrich themselves and persons acting on its behalf with funds from Ascentium.

47.     OMHT, another co-conspirator, engaged in an unlawful practice of siphoning off funds from MHT for each "license" fee MHT received in the form of cash sent by Ascentium to MHT. OMHT is controlled by, and exists for the benefit of Scott and Judy Postle. It is believed that OMHT has siphoned off three million ($3,000,000.00) from MHT in at least one fiscal year for MHT, and possibly more for the duration of the scheme. Scott Postle, Judy Postle, Nhue Ho, David Fronk, Bradley Leire, and numerous other MHT representatives and employees have been similarly enriched by this scheme perpetrated on Plaintiffs and those similarly situated.

48.     In or around August 2016, MHT began to fall behind on the payments it had been making to Ascentium.

49.     The Plaintiffs and those similarly situated began to receive demand letters and phone calls from Ascentium. For many of the Plaintiffs and those similarly situated, this was the first contact that they had received from anyone related to MHT since signing certain documents with MHT.

50.     MHT, through Scott Postle, instructed the physicians to ignore the demands from the financial institution and take no action, including making any payments on behalf of the Artificial LLCs created by MHT.   Instead, MHT assured that it would handle all issues associated with Ascentium, including making payments.

51.     In contrast, Ascentium has begun directly contacting Plaintiffs and multiple similarly situated persons, explicitly urging them to disregard MHT's instructions and to pay the amounts currently due under the Installment Purchase Agreement.

52.     Plaintiffs and those similarly situated began to make requests to MHT to release them from alleged obligations with MHT and, to the extent any obligation existed, with the financial institutions.

53.     MHT represented that it would release certain physicians from their obligations on a first-come-first-served basis, on the condition that MHT or the physician could find another physician to purchase that physician's software licenses, thus perpetuating and furthering the scheme, and possibly duping those unwitting physicians to participate in the scheme and victimize yet additional doctors.

54.     Plaintiffs and those similarly situated remain trapped in MHT's and Cliff McKenzie's scheme, despite their failure to provide anything of value to them, until MHT can find additional physicians to become victim to MHT's scheme.

55.     Further, through Defendants' fraud and other deceptive trade practices, Plaintiffs, and those similarly situated are allegedly indebted to Ascentium for hundreds of thousands of dollars, cumulatively tens of millions of dollars. Plaintiffs have still received little or nothing of value from MHT.  There has been and is a lack of legal consideration for the alleged obligations of Plaintiffs, and a failure to perform on the part of defendants, among other failures. In addition, despite the lack of consent and consideration, including lack of proper notice of any interest rate, Plaintiffs are allegedly guarantors of loans for funds that Ascentium, sent directly to MHT, allegedly for the benefit to the Artificial LLCs.

## CLASS ACTION ALLEGATIONS

56.     Plaintiffs re-allege and incorporate by reference the allegations set forth in each of the preceding paragraphs of this Complaint.

57.     Pursuant to Federal Rule of Civil Procedure 23, Plaintiffs bring this class action and seek certification of the claims and certain issues in this action on behalf of a Class defined as:

> All United States Physicians who have entered into any MSA, licensing, or business associate agreements with America's MHT, Inc. or related entities and for whom Ascentium Capital, LLC ("Ascentium") claims that the Physician is obligated as a guarantor of any loan funded by Ascentium and made to an LLC in which the Physician is allegedly a member.

58.     Plaintiffs reserve the right, with leave of Court if required, to amend the Class definition if further investigation and discovery indicates that the Class definition should be narrowed, expanded, or otherwise modified. Excluded from the Class of Plaintiffs are governmental entities; the Defendants; any entity in which defendants have a controlling interest; and Defendants' officers, directors, affiliates, legal representatives, employees, co-conspirators, successors, subsidiaries, and assigns. Also excluded from the Class is any judge, justice, or judicial officer presiding over this matter and the members of their immediate families and judicial staff.

59.     Defendants' practices and omissions were applied uniformly to all members of the Class, so that the questions of law and fact are common to all members of the Class and any subclasses the Court might find to be appropriate.

60.     All members of the Class and any subclasses were and are similarly affected by the Defendants' acts and omissions, and the relief sought herein is for the benefit of Plaintiffs and members of the Class and any subclasses.

61.     Based on the past annual sales of the MHT Programs, it is apparent that the number of consumers in both the Class and any subclass is so large as to make joinder impractical, if not impossible, and certainly exceed one hundred (100) in number.

62.     Questions of law and fact common to the Plaintiff Class and any subclasses exist that predominate over questions affecting only individual members, including, inter alia:

a.  Whether the Defendants, or any of them, have engaged in or furthered an illegal scheme, prohibited by applicable law, including, but not limited to the Texas Deceptive Trade Practices Act;

b.  If the Court determines the Defendants, or any of them, have in fact engaged in or furthered an illegal scheme, whether an injunction should be issued ordering those Defendants to cease and desist any and all actions or behaviors in furtherance of the scheme;

c.  Whether Defendants disclosed or concealed essential terms of purported loan agreements and/or guarantee agreements, including the rate of interest;

d.  Whether the essential elements of offer, acceptance and consideration were present in purported loan agreements and/ or purported guarantee agreements for those alleged agreements to be enforceable against either the Artificial LLCs or the Plaintiffs;

e.  Whether the Plaintiffs should have any legal liability, obligation, responsibility or accountability for obligations, indebtedness, acts or omissions of or by the Artificial LLCs;

f.  Whether MHT and/or persons acting on its behalf, were the real parties in interest in loan transactions among Ascentium and purported borrowers and/or purported guarantors of loans by Ascentium;

g.  The nature and extent of Ascentium's role, including person(s) acting on its behalf, if any, in the scheme;

h.  Whether Ascentium should be ordered to cease and desist efforts to enforce the purported loan agreements against either the Artificial LLCs or the Plaintiffs;

i.  Whether Ascentium, or persons acting on its behalf, should be enjoined from communicating with Plaintiffs;

j.  Whether Defendants should be enjoined from communicating any information to third parties regarding Plaintiffs payment history or any other information that could negatively reflect on Plaintiffs credit standing, including, but not limited to, negative information reporting to credit reporting agencies such as Equifax, Experian, and Transunion; and

k.  To the extent that any Defendant has reported any information to any credit reporting agency regarding any Plaintiffs, whether those Defendants should be ordered to make a full retraction of any such credit reporting.

l.  Whether MHT substituted itself under Vendor Agreements to any obligations due Ascentium, under the Installment Purchase Agreements so as to extinguish any obligations purportedly owed by Plaintiffs.

63.   The claims asserted by Plaintiffs in this action are typical of the claims of the members of the Plaintiff Class and any subclass, as the claims arise from the same course of conduct by Defendants, and the relief sought within the Class and any subclasses is common to the members of each.

64.   Plaintiffs, individually and on behalf of the class specifically do not seek to recover money damages for their losses and injuries in this proceeding. Instead, Plaintiffs, individually and on behalf of all similarly situated persons, reserve the right and ability to seek damages and monetary remuneration for their losses and injuries on an individual basis, and as they might find to be just and appropriate. This proceeding is limited to requests for injunctive and declaratory

relief sought herein, all of which is consistent with class certification under Rule 23 and interpretative jurisprudence.

65.    Plaintiffs will fairly and adequately represent and protect the interests of the members of the Plaintiff Class and any subclasses.

66.    Class representatives will be formally designated consistent with scheduling orders handed down by the Court.

67.    Plaintiffs has retained counsel competent and experienced in class action litigation.

68.    Certification of this class action is appropriate under Federal Rule of Civil Procedure 23 because the questions of law or fact common to the respective members of the Class and any subclasses predominate over questions of law or fact affecting only individual members. This predominance makes class litigation superior to any other method available for a fair and efficient decree of the claims.

69.    Absent a class action, it would be highly unlikely that the representative Plaintiffs or any other members of the Class or any subclass would be able to protect their own interests because the cost of litigation through individual lawsuits might exceed expected recovery.  Moreover, there is a real and substantial chance of inconsistent verdicts or judgments if Plaintiffs are unable to seek uniform resolution of their claims.

70.    This action is properly maintainable as a class action under Fed. R. Civ. P. 23(b)(1)(A) because prosecuting separate actions by individual class members would create a risk of inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for Defendants.

71.     This action is properly maintainable as a class action under Fed. R. Civ. P. 23(b)(1)(A) because adjudications with respect to individual class members would, as a practical matter, be dispositive of the interests of the other members not parties to the individual adjudications.

72.     This action is properly maintainable as a class action under Fed. R. Civ. P. 23(b)(2) because Defendants have acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole.

73.     Alternatively, this action is properly maintainable as a class action under Fed. R. Civ. P. 23(b)(3) because questions of law or fact predominate over any questions affecting individual class members, and a class action is superior to other methods in order to ensure a fair and efficient adjudication of this controversy because, in the context of wage and hour litigation, individual Plaintiffs lack the financial resources to vigorously prosecute separate lawsuits against large corporate defendants. Class litigation is also superior because it will preclude the need for unduly duplicative litigation resulting in inconsistent judgments pertaining to Defendant's policies and practices. There does not appear to be any difficulties in managing this class action. With leave and approval by the Court, Plaintiffs intend to send notice to the proposed Rule 23 Class to the extent required by Fed. R. Civ. P. 23(c).

74.     A class action is a fair and appropriate method for the adjudication of the controversy, in that it will permit a large number of claims to be resolved in a single forum simultaneously, efficiently, and without the unnecessary hardship that would result from the prosecution of numerous individual actions and the duplication of discovery, effort, expense and burden on the courts that individual actions would engender.

75.     The benefits of proceeding as a class action, including providing a method for obtaining redress for claims that would not be practical to pursue individually, outweigh any difficulties that might be argued with regard to the management of this class action.

## CAUSES OF ACTION

## TEXAS DECEPTIVE TRADE PRACTICES ACT

76.     Plaintiffs re-allege and incorporate by reference the allegations set forth in each of the preceding paragraphs of this Complaint.

77.     Plaintiffs, and those similarly situated, now seek a full and complete rescission of all contracts between them and Defendants, and any of them, and especially any loan guaranty or other indebtedness or alleged indebtedness as a result of the deceptive trade practices of MHT, Inc., Scott Postle, Ascentium, and Cliff McKenzie. Specifically, Defendants have committed numerous prohibited actions in the Texas Deceptive Trade Practices Act ("Texas DTPA"), Tex. Bus. & Com. Code §17.46(b).

78.     In this connection, Plaintiffs, and those similarly situated, would show that they are consumers, the Defendants engaged in false, misleading, or deceptive acts as defined under section 17.46(b) of the DTPA, and these acts constituted a producing cause of damages to Plaintiffs.

79.     Plaintiffs, and those similarly situated, would further show that the Defendants' acts were unconscionable.

80.     Specifically, Plaintiffs and those similarly situated would show as detailed above that these MHT, Scott Postle, and others acting on behalf of MHT represented that the Medical Home Team Services Program had characteristics which it did not have. MHT, Scott Postle, and others acting on behalf of MHT represented that the MSA would confer certain rights and benefits which were never provided. Defendants made false representations that the "in home care" medical

practice would be a profitable venture. It was certainly not for Plaintiffs and those similarly situated.

81.    MHT, Scott Postle, and others acting on behalf of MHT represented that the Medical Home Team Services Program, including the software and intellectual property licensed to the Artificial LLCs, was of a high quality when it was not. All of such conduct is a violation of §17.46(b) of the Texas DTPA. Moreover, Plaintiffs, and those similarly situated, would show that the conduct of these Defendants was committed knowingly and intentionally.

82.    Further, Defendants, including Ascentium and Cliff McKenzie, represented that the Installment Purchase Agreement had certain characteristics that it did not, including but not limited to, the hidden and exorbitant of rate of interest sought to be charged by Ascentium for each agreement.

83.    Plaintiffs' objective in the transactions at issue was the purchase and/or licensing of software and a medical home care program the medical aspects of which they would supervise. The financing arranged with Ascentium was the means of making that purchase. The alleged DTPA violations arose out of these transactions. Ascentium and MHT were inextricably intertwined in the financing and sales aspects of the transactions.  As such, both Ascentium and MHT sought to enjoy the benefits of the transactions, and Plaintiffs are consumers as to both.

84.    Pursuant to §17.50(b)(3) of the Texas DTPA, Plaintiffs, and those similarly situated, seek a judgment and such orders from the Court as may be necessary to restore to them "any money or property, real or personal, which may have been acquired in violation of this subchapter." Plaintiffs and those similarly situated limit this requested relief to rescission of the MSA, rescission of the License Agreements, and related agreements with MHT, as well as rescission of the

Installment Purchase Agreements to the extent Plaintiffs and those similarly situated are alleged to be guarantors or obligors of any loan made by Ascentium.

85.     Plaintiffs seek an order of a mandatory injunction requiring all Defendants to cease and desist any efforts or practices designed, intended or seeking to collect monies from Plaintiffs for loans ostensibly related to licenses issued to the Artificial LLCs.

86.     Plaintiffs seek a declaration that they are not guarantors of, and that they have no legal liability, responsibility or accountability for repayment of any portion of any loans ostensibly related to licenses issued to the Artificial LLCs.

87.     This Court should further declare that the LLCs or PLLCs, created and operated by MHT with the purported authorization of the Plaintiffs and those similarly situated, were created in violation of the Texas DPTA, and as such create no rights, obligations, or other legal relationship with those particular physicians, but are solely the responsibility of MHT, which created them for operation of its scheme.

88.     Additionally, pursuant to Tex. Bus. & Com. Code Ann.  §17.50(d), Plaintiffs, and those similarly situated, seek a judgment awarding them their reasonable and necessary attorney's fees incurred in prosecuting this claim.

89.     Defendants actions caused actual damages to Plaintiffs.  However, and for the avoidance of any doubt, Plaintiff represent and aver that they do not seek an award of those damages at this time or in this proceeding.  Rather they seek only the injunctive and declaratory relief described in the paragraph above.

90.     Plaintiffs' reserve the right to seek money damages, specifically including but by no means limited to, treble damages as provided by Tex. Bus. & Com. Code Ann. § 17.50(b)(1) at

their discretion, in separate proceedings, which would in fact be superior to requesting that this Court resolve individual and potentially non-common claims for money damages.

91.     However, if the Court finds it inappropriate to preserve the right to seek money damages in a separate state court suit, Plaintiffs seek all appropriate damages consistent with this class action, including punitive damages and treble damages as provided by Tex. Bus. & Com. Code Ann. § 17.50(b)(1).

## DECLARATION OF EQUITABLE ESTOPPEL

92.     Plaintiffs re-allege and incorporate by reference the allegations set forth in each of the preceding paragraphs of this Complaint.

93.     Similarly, Plaintiffs, on their own behalf and on behalf of the class of those similarly situated individual physicians, seek a declaration by this Court that they are not and cannot be held responsible or liable, as guarantors or under any other legal theory or cause of action, for the alleged loans provided by Ascentium to the Artificial LLCS.

94.     Plaintiffs, and those similarly situated, seek a declaratory judgment estopping any enforcement of the MSA, License Agreements, Installment Purchase Agreements, and any other agreement with those or their related entities against Plaintiffs and those similarly situated based on equitable estoppel. Plaintiffs, and those similarly situated, would show as detailed above that MHT and Ascentium, through person(s) acting on its behalf, made material representations to them that they knew or reasonably should have known were false.

95.     Accordingly, this Court should declare that MHT and Ascentium are precluded under the doctrine of equitable estoppel from asserting rights against Plaintiffs and those similarly situated under the MSA, License Agreements, and related agreements with MHT, as well as the Installment Purchase Agreements.

96.     Plaintiffs participated in the Medical Home Team Services Program as a result of these misrepresentations.

97.     This Court should further declare that the LLCs or PLLCs, created and operated by MHT with the purported authorization of the Plaintiffs and those similarly situated, create no rights, obligations, or other legal relationship with those particular physicians, but are solely the responsibility of MHT, which created them for operation of its scheme.

## DECLARATION OF UNENFORCEABILITY OF CONTRACTS

98.     Plaintiffs re-allege and incorporate by reference the allegations set forth in each of the preceding paragraphs of this Complaint.

99.     Similarly, Plaintiffs, on their own behalf and on behalf of those similarly situated, seek a declaration by this Court that they are not and cannot be held responsible or liable, as guarantors or under any other legal theory or cause of action, for the alleged loans provided by Ascentium to the Artificial LLCs.

100.    Plaintiffs and those similarly situated seek a declaratory judgment that the MSA, License Agreements, Installment Purchase Agreements, and any other agreement with those or their related entities are invalid and unenforceable.

101.    A valid contract consists of (1) an offer, (2) an acceptance in strict compliance with the terms of the offer, (3) a meeting of the minds, (4) each party's consent to the terms, and (5) execution and delivery of the contract with the intent that it be mutual and binding.

102.    Plaintiffs and those similarly situated would show as detailed above that MHT and Ascentium failed to disclose numerous essential terms to the contracts at issue resulting in a lack of consent and no meeting of the minds.

103.    Moreover, a contract must be based upon a valid consideration, and a contract in which there is no consideration from one party lacks mutuality and is unenforceable.

104.    Plaintiffs and those similarly situated would show as detailed above that MHT and Ascentium failed to provide any consideration to Plaintiffs in the contracts at issue resulting in the unenforceability of the contracts at issue.

105.    Accordingly, this Court should declare that MHT and Ascentium are precluded from asserting rights against Plaintiffs under the MSA, License Agreements, and related agreements.

## DECLARATION OF UNCONSCIONABILITY

106.    Plaintiffs re-allege and incorporate by reference the allegations set forth in each of the preceding paragraphs of this Complaint.

107.    Plaintiffs, and those similarly situated, seek a judgment of the Court declaring the MSA, License Agreements, Installment Purchase Agreements, and any other agreement with those or their related entities are unenforceable as unconscionable, as they pertain to Plaintiffs and those similarly situated.

108.    A contract is unenforceable if, "given the parties' general commercial background and the commercial needs of the particular trade or case, the clause involved is so one-sided that it is unconscionable under the circumstances existing when the parties made the contract."

109.    Plaintiffs show as detailed above that the MSA, License Agreements, Installment Purchase Agreements are one-sided imposing exorbitant obligations on Plaintiffs while requiring very little on the part of Defendants.

## DECLARATION OF NOVATION

110.    Plaintiffs re-allege and incorporate by reference the allegations set forth in each of the preceding paragraphs of this Complaint.

111.    Plaintiffs, and those similarly situated, seek a declaratory judgment declaring that the Installment Purchase Agreements are extinguished based on the novation.

112.    Under Texas law "A novation is the substitution of a new agreement between the same parties or the substitution of a new party on an existing agreement." *Honeycutt v. Billingsley*, 992 S.W.2d 570, 576 (Tex. App.—Houston [1st Dist.] 1999).

113.    Here, MHT and Ascentium agreed to substitute MHT under the Vendor Agreement to any obligations due Ascentium under the Installment Purchase Agreements.

114.    Accordingly, this Court should declare that any obligations on the part of Plaintiffs and those similarly situated under Installment Purchase Agreements are extinguished.

## JURY DEMAND

115.    Plaintiffs demand trial by jury on all issues.

## PRAYER

116.    WHEREFORE Plaintiffs, Dr. Derek Melby and Dr. Danilo Policarpio on behalf of themselves and all other similarly situated, pray for relief pursuant to each cause of action set forth in this Complaint as follows:

a.   For an order certifying that the action may be maintained as a class action, certifying the individuals formally designated (consistent with scheduling orders handed down by the Court) as representative of the Class, and designating their counsel as counsel for the Class;

b.   For an award of equitable relief as follows:

i.   For a declaration that the LLCs or PLLCs created and operated by MHT with the purported authorization of the Plaintiffs and those similarly situated create no rights, obligations, or other legal relationship with those particular physicians, but are solely the responsibility of and/or create obligations solely on behalf of MHT.

ii.   For a declaration that MHT's contracts with the Plaintiffs and those similarly situated are null and void;

   iii.  For a declaration that Ascentium's contracts with the Plaintiffs and those similarly situated are null and void;

   iv.  Enjoining MHT and Ascentium from enforcing their purported agreements with Plaintiffs and those similarly situated against the Plaintiffs and those similarly situated;

   v.  Reserving to Plaintiffs the right and ability to seek damages and monetary remuneration for their losses and injuries on an individual basis, and as they might find to be just and appropriate, including but not limited to, treble damages under the Texas Deceptive Trade Practices Act.

   vi.  For reasonable attorney's fees;

   vii.  For an award of costs;

   viii.  For any other relief the Court might deem just, appropriate, or proper; and

   ix.  To the extent that any claims for damages are tried, and damage claims are not reserved, for pre- and post-judgment interest on any amounts awarded.

c.  Plaintiffs and those similarly situated do not pursue damages for their claims and specifically reserve any action in damages for state court proceedings that have been and may be filed related to the subject matter of this complaint; unless the Court finds it inappropriate to preserve the right to seek money damages in a separate state court suit, in which case Plaintiffs seek all appropriate damages consistent with this class action, including all available punitive damages and treble damages as provided by Tex. Bus. & Com. Code Ann. § 17.50(b)(1).

Date:  January 17, 2017                          Respectfully submitted,

                                                 */s/ E. Leon Carter*
                                                 E. Leon Carter
                                                 Texas Bar No. 03914300
                                                 lcarter@carterscholer.com
                                                 Joshua J. Bennett
                                                 Texas Bar No. 24059444
                                                 jbennett@carterscholer.com
                                                 **CARTER SCHOLER ARNETT**
                                                 **& MOCKLER, PLLC**
                                                 8150 N. Central Expy, Suite 500
                                                 Dallas, Texas 75206
                                                 Telephone: (214) 550-8188
                                                 Facsimile: (214) 550-8185

                                                 And

                                                 Paul Crouch
                                                 The Crouch Firm, PLLC
                                                 Bar #05144700
                                                 5609 Masters Ct.
                                                 Flower Mound, TX 75022
                                                 Telephone: (817) 714-9820
                                                 Facsimile: (855) 886-6374

                                                 **ATTORNEYS FOR PLAINTIFFS**