IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| DR. DEREK MELBY, and DANILO POLICARPIO as individuals and on behalf of all others similarly situated | § § § § | |
| Plaintiffs, | § § | Civil Action No. 3:17-CV-155-M |
| v. | § § | *consolidated with* |
| AMERICA'S MHT, INC., SCOTT POSTLE, ASCENTIUM CAPITAL, LLC, and CLIFF MCKENZIE | § § § § | Civil Action Nos. 3:17-CV-732-M; 3:17-CV-868-M; and 3:17-CV-963-M |
| Defendants. | § § | |

**PLAINTIFFS' MOTION FOR FINAL APPROVAL OF PARTIAL CLASS
ACTION SETTLEMENT AND MEMORANDUM OF LAW IN SUPPORT**

Plaintiffs and named representatives, Dr. Derek Melby, Dr. Danilo Policarpio, Dr. David

Guillot, and Dr. Jaideep Patel, ("Plaintiffs") file this Motion for Final Approval.

## TABLE OF CONTENTS

I.    INTRODUCTION ............................................................................................... 1

II.   BACKGROUND OF LITIGATION .............................................................. 2

III.  THE PROPOSED SETTLEMENT .............................................................. 3

    1.    THE ROLE OF THE COURT ........................................................................ 5
    2.    THE PROPOSED SETTLEMENT CLASS MAY BE CERTIFIED ........................... 5
        A.    The Proposed Settlement Class Satisfies Rule 23(a) ......................... 6
            (i)    The Class is too numerous to join all members......................... 6
            (ii)   There are common questions of law or fact............................... 6
            (iii)  The Representative Plaintiffs' claims are typical. ................... 7
            (iv)   The Representative Plaintiffs adequately represent the class.......... 7
        B.    The Proposed Settlement Class Satisfies Rule 23(b)(2). ................... 8
        C.    The Proposed Settlement Class Satisfies Rule 23(b)(3). ................... 9
            (i)    The Proposed Settlement Class satisfies Rule 23(b)(3)'s predominance
            requirement. ................................................................... 9
            (ii)   The Proposed Settlement Class satisfies Rule 23(b)(3)'s superiority
            requirement. ................................................................... 11
        D.    The Court Should Appoint Couhig Partners, LLC, Carter, Scholer, PLLC, and
        The Crouch Firm, PLLC as Settlement Class Counsel Under Rule 23(g) ............... 12
    3.    THE SETTLEMENT WARRANTS FINAL APPROVAL ....................................... 13
        A.    There Are No Grounds to Doubt The Fairness Of The Settlement, Which Is The
        Product Of Extensive, Arm's-Length Negotiations ................................. 14
        B.    The Complexity, Expense And Likely Duration of The Litigation ............... 16
        C.    The Stage of the Proceedings and the Amount of Discovery Completed............. 17
        D.    The Probability of Plaintiffs' Success on the Merits.......................... 18
        E.    The Settlement Falls Within the Range of Possible Approval................... 18
        F.    The Opinions of the Class Counsel, Class Representatives, and Absent Class
        Members ........................................................................... 20

IV.   THE PROPOSED PLAN OF CLASS NOTICE............................................... 22

V.    CLASS MEMBER OBJECTIONS.............................................................. 24

VI.   CONCLUSION.......................................................................... 25

## TABLE OF AUTHORITIES

**CASES**

*Amchem Prods. Inc. v. Windsor*, 521 U.S. 591(1997) .......................................................... 5, 9, 10
*Aron v. Crestwood Midstream Partners LP*, 2016 U.S. Dist. LEXIS 152427 (S.D. Tex. 2016) ... 9
*Billitteri v. Sec. Am., Inc.*, 2011 U.S. Dist. LEXIS 92713 (N.D. Tex. 8/4/2011) ............. 10, 11, 12
*Bolton v. Tesoro Petroleum Corp.*, 871 F.2d 1266 (5th Cir. 1989). ........................................... 16
*Cobell v. Salazar*, 679 F.3d 909 (D.C. Cir. 2012) ..................................................................... 22
*Cotton v. Hinton,* 559 F.2d 1326 (5th Cir. 1977) ..................................................... 13, 14, 21, 22
*Dandridge v. Jefferson Parish Sch. Bd.*, 2009 WL 24461 (E.D. La. Jan. 5, 2009) ..................... 25
*DeHoyos v. Allstate Corp*., 240 F.R.D. 269 (W.D. Tex. 2007) ..................................................... 9
*Eatmon v. Palisades Collection, LLC*, 2010 WL 1189571 (E.D. Tex. 3/5/2010) ............... 6, 7, 10
*Florida Trailer & Equipment Co. v. Deal*, 284 F.2d 567 (5th Cir. 1960) .................................. 13
*Hamilton v. First Am. Title Ins. Co.*, 266 F.R.D. 153 (N.D. Tex. 2010) ....................................... 8
*In re Am. Bank Note Holographics, Inc., Sec. Litig.*, 127 F. Supp. 2d 418 (S.D.N.Y. 2001) ....... 19
*In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164 (S.D.N.Y. 2000), *aff'd sub nom. D'Amato v. Deutsche Bank*, 236 F.3d 78 (2d Cir. 2001) ................................................. 17
*In re Cardizem CD Antitrust Litig*., 218 F.R.D. 508 (E.D. Mich. 2003) .................................... 21
*In re Corrugated Container Antitrust Litig.*, 643 F.2d 195 (5th Cir. 1981). ............................... 17
*In re Dell, Inc.*, 2010 WL 2371834 (W.D. Tex. 7/11/2010) ....................................................... 10
*In re Katrina Canal Breaches Litig.*, 628 F.3d 185 (5th Cir. 2010) ........................................... 23
*In re Nissan Motor Corp. Antitrust Litig.*, 552 F.2d 1088 (5th Cir. 1977) .................................. 23
*In re Oil Spill by Oil Rig Deepwater Horizon*, 910 F. Supp. 2d 891 (E.D. La. 2012) ...... 21, 24, 25
*In re Shell Oil Refinery*, 155 F.R.D. 552 (E.D. La. 1993) ................................................... 14, 15
*In re the Mills Corp. Sec. Litig.*, 265 F.R.D. 246 (E.D. Va. 2009) ............................................. 15
*In re Wilborn*, 609 F.3d 748 (5th Cir. 2010). ............................................................................. 11
*James v. City of Dallas,* 254 F.3d 551 (5th Cir. 2001) ................................................................. 7
*Jenkins v. Raymark Indus., Inc.*, 782 F.2d 468 (5th Cir. 1986) .................................................... 9
*Klein v. O'Neal, Inc.*, 705 F. Supp. 2d 632 (N.D. Tex. 2010) ..................................................... 22
*Lelsz v. Kavanagh*, 783 F. Supp. 286 (N.D. Tx 12/30/1991) ................................................. 21, 22
*Levell v. Monsanto Research Corp.*, 191 F.R.D. 543 (S.D. Ohio 2000) ..................................... 17
*Lightbourn v. County of El Paso,* 118 F.3d 421 (5th Cir. 1997) ................................................... 6
*Linney v. Cellular Alaska Partnership*, 151 F.3d 1234 (9th Cir. 1998) ..................................... 17
*Longden v. Sunderman*, 123 F.R.D. 547 (N.D. Tex. 1988) ......................................................... 7
*Madison v. Chalmette Refining, L.C.C.*, 637 F.3d 551 (5th Cir. 2011) ................................... 9, 10
*Maher v. Zapata Corp.,* 714 F.2d 436 (5th Cir. 1983) ............................................................... 13
*Manchaca v. Chater*, 927 F.Supp. 962 (E.D. Tex. 1996) .......................................................... 17
*Marcus v. J.C. Penney Co*., 2017 U.S. Dist. LEXIS 214427 (E.D. Tex. 2017). ......................... 19
*McNamara v. Bre-X Minerals Ltd.*, 214 F.R.D. 424 (E.D. Tex. 2002) .............................. 5, 6, 14
*Miller v. Republic Nat'l Life Ins. Co.*, 559 F.2d 426 (5th Cir. 1977) ....................................... 13
*Moore v. Halliburton Co*., 2004 U.S. Dist. LEXIS 18187 (N.D. Tex., Oct. 7, 2004) ................. 14
*Mullen v. Treasure Chest Casino, LLC*, 186 F.3d 620 (5th Cir. 1999) ......................................... 6
*Nathenson v. Zonagen, Inc.*, 267 F.3d 400 (5th Cir. 2001) ....................................................... 16
*Neff v. Via Metro. Transit Auth.*, 179 F.R.D. 185 (W.D. Tex. 1998) ......................................... 15
*Oscar Private Equity Invs. v. Holland*, 2005 U.S. Dist. LEXIS 6525 (N.D. Tex. 2005) ............. 16
*Pettway v. American Cast Iron Pipe Co.,* 576 F.2d 1157 (5th Cir. 1978). .................................. 20

*Reed v. General Motors Corp.*, 703 F.2d 170 (5th Cir. 1983)....................................... 5, 14, 20, 21
*Sandoval v. Tharaldson Employee Mgmt.*, 2010 WL 2486346 (C.D. Cal. 6/15/2010) ............... 15
*Schwartz v. TXU Corp.*, 2005 U.S. Dist. LEXIS 27077 (N.D. Tex. 2005) ................. 6, 14, 16, 17
*Shaw v. Toshiba Am. Info. Sys.*, 91 F.Supp.2d 942 (E.D. Tex. 1/28/2000) ................................. 12
*TBK Partners, Ltd. v. Western Union Corp.,* 675 F.2d 456 (2d Cir. 1982)................................. 21
*Torres v. S.G.E. Mgmt., L.L.C.*, 838 F.3d 629 (5th Cir. Tex. 9/30/2016)................................... 10
*Unger v. Amedisys, Inc.*, 401 F.3d 316 (5th Cir. 2005) .............................................................. 7
*Young v. Katz,* 447 F.2d 431 (5th Cir. 1971) ............................................................................. 14

**RULES**

Fed. R. Civ. P. 23(b)(3)............................................................................................................ 11
Fed. R. Civ. P. 23(c)(2)(B) ...................................................................................................... 22
Fed. R. Civ. P. 23(e)(1)............................................................................................................ 22
Fed. R. Civ. P. 23(g)(1)(A), (B)......................................................................................... 12, 13

**TREATISES**

*Manual for Complex Litigation, Fourth* ("*Manual 4th*") (2010)............................................ 5, 22

iv

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR**
**FINAL APPROVAL OF PARTIAL CLASS ACTION SETTLEMENT**

## I.    INTRODUCTION

Plaintiffs are physicians who were participants in the America's Medical Home Team ("MHT") Program. This class action asserts claims against MHT[1] as well as the financing companies who offered financing for the Program. These include Ascentium Capital, Inc. ("Ascentium" or "Settling Defendant"), Univest Capital, Inc., ("Univest" or "Settling Defendant") and Balboa Capital Corp. ("Balboa"). Scott Postle, the principal at MHT, and Cliff McKenzie (McKenzie or "Settling Defendant"), an individual employed at certain pertinent times by Ascentium. MHT schemed to promise physicians vast profits for supervising nurse practitioners rendering in-home health care services to patients. MHT sold licenses and equipment to the physicians through LLCs MHT created for them, and the Defendant financing companies provided the financing for such sales with personal guaranties. MHT salespeople signed their victims to Installment Payment Agreements, ("IPAs") with the Defendant financing companies. Plaintiffs maintain the whole process was fraught with misrepresentations, and the Program depended upon constantly signing up new physicians to sustain itself.  Before the Court is a preliminarily-approved settlement which will resolve claims of all class members against Ascentium, Univest, and McKenzie only. The settlement does not resolve claims by class members against any other Defendant ("Non-Settling Defendants").[2]

---

[1] Subject to a bankruptcy stay pursuant to this Court's Order R. Doc. 44.

[2] This Court has scheduled a fairness hearing for March 12, 2018. This motion in support of final approval of the settlement is filed by the Plaintiffs at the soonest practical instance as (a) putative class members were given until February 26, 2018 to have their exclusion notices post marked, (b) the court appointed Settlement Administrator received exclusion notices as late as March 2, 2018, and (c) the Settlement Administrator's exclusion report to Class Counsel was not due until March 5, 2018. See R. Doc. 64. Lastly, it should be noted that Paragraph 57 (C) of the Stipulation of Settlement (R.Doc. 59-1) allows for Ascentium to terminate the settlement in the event that "Potential Class Members who would be liable in the aggregate for more than 10% of the total Cash Settlement Consideration due under the terms of this Stipulation timely opt out of the Settlement Class." As of the time of this filing, timely

## II.    BACKGROUND OF LITIGATION

Commencing in 2012, Defendant MHT and its principals conceived and began a scheme that duped the approximately 279 class members, most physicians, into participation in its Program. MHT employed salespeople who gave a common sales pitch with use of common materials to induce the physicians into the fraudulent scheme. Plaintiffs contend that the class members were induced to apply for and obtain financing from a "financial backer." The class members were told the financing was a line of credit for operational costs when what actually took place was a financed purchase of a license and software. The financed purchase was backed by a personal guaranty from the physician, and in some cases a physician association or business partners, with the funds going straight to MHT. MHT utilized three "financial backers": Ascentium, Univest, and Balboa (sometimes referred to as "Lender Defendants"). Most class members signed four IPA guarantees totaling approximately $458,000 over five and a half years.

Four consolidated suits against MHT, Scott Postle, Ascentium, Univest, Balboa, and McKenzie have been filed in this Court. The undersigned moved for an injunction to prevent perpetuation of the scheme and collection efforts against class members. The scheme was effectively ended when MHT was forced to declare bankruptcy in May of 2017. In connection with the briefing in pursuit of the injunction, Plaintiffs presented the Court with substantial evidence and testimony from multiple sources, which established the perpetuated fraud.

Settlement negotiations between Plaintiffs, Ascentium, and McKenzie have been long, given the complication of multiple defendants, multiple plaintiffs, class members located all

---

opt outs have been received by potential Class Members who would be liable in the aggregate for approximately one third of the total Cash Settlement Consideration. There is potential for some of these opt outs to be withdrawn prior to the Fairness Hearing. In any event, Ascentium has elected to not terminate this settlement pursuant to Paragraph 57 (C).

across the country, litigation initiated by Univest and by Balboa in different forums, and the

bankruptcy of MHT. Plaintiffs, Ascentium, and McKenzie employed the services of a mediator

in late July 2017 and worked for months to achieve a resolution. Univest later became part of the

negotiations and also agreed to terms. Ascentium and Univest represent approximately 90% of

the outstanding MHT-related installment payment agreements at issue in this matter.

## III.    THE PROPOSED SETTLEMENT

The proposed "Stipulation of Settlement" defines the "Settlement Class" as consisting of

the "MHT Program Class," and "Subclass One" through "Subclass Four." R. Doc. 59-1. The

"MHT Program Class" is defined as every person who is currently listed in Ascentium's,

Univest's, and/or MHT's books and records (including without limitation MHT's bankruptcy

schedules) as a Guarantor and/or as an owner of a Doctor LLC. "Doctor LLCs" were entities

created by MHT for physicians to participate in the Program.

Subclass One is defined as every member of the MHT Program Class who (a) is not a

Guarantor of an Univest IPA but (b) is a Guarantor of an Ascentium IPA with (i) a "book date"

of January 1, 2016, or later stated in Ascentium's books and records and (ii) a balance

outstanding on August 31, 2017. Subclass Two is defined as every member of the MHT Program

Class who (a) is a Guarantor of a Univest IPA and (b) is also a Guarantor of an Ascentium IPA

with (i) a "book date" of January 1, 2016, or later stated in Ascentium's books and records and

(ii) a balance outstanding on August 31, 2017. Subclass Three is defined as every member of the

MHT Program Class who is a Guarantor of an Ascentium IPA with (i) a "book date" of

December 31, 2015, or earlier stated in Ascentium's books and records and (ii) a balance

outstanding on August 31, 2017. Subclass Four is defined as every member of the MHT Program

Class who is a Balboa Guarantor but not a Univest Guarantor or an Ascentium Guarantor.

Subclass Four consists of those listed as Guarantors of Balboa IPAs; and, since claims under those alleged guarantees are not released in this settlement, this subclass settlement involves the payment of cash to these members for the release of claims against the Settling Defendants.

The Class Members agree to release all claims against the Settling Defendants. The consideration to the settling class and subclasses includes class-wide injunctive relief by Ascentium's and Univest's agreement to (i) refrain from any negative credit reporting against any Potential Class Member for alleged indebtedness up to Final Judgment; (ii) retract any extant negative credit reporting for anything prior to Final Judgment; and (iii) refrain from any further collection efforts or negative credit reporting against any Potential Class Member. There is a release from all claimed obligations under the Ascentium and Univest IPAs.

The Settlement Consideration due from each member of Subclass One and each member of Subclass Two is the lesser of (i) $85,900.50 and (ii) 80% of the total of all payments remaining due under the original terms of all Ascentium and Univest IPAs for which such subclass member is listed as a Guarantor. This is to be paid in sixty (60) monthly installments. Many of the members in these subclasses are on the books as guaranteeing up to four IPAs.

The Settlement Consideration due from each member of Subclass Three is the lesser of (i) $114,534.00 and (ii) 80% of the total of all payments remaining due under the original terms of all Ascentium and Univest IPAs for which such subclass member is listed as a Guarantor. This is to be paid in forty-eight (48) monthly installments.

The benefits to these subclasses are substantial as nearly every class member is claimed to have at least two IPAs with outstanding amounts and some with as many as four. Altogether the scale of released contested claims under IPA guarantees is $52,000,000.00 in exchange for settlement payment obligations of approximately $15,000,000.00 –a difference of approximately

4

$37,000,000.00. Moreover, Subclasses 1-3 have additional consideration of an early payment option for a 20% discount of the applicable termed settlement amount.

Subclass Four includes those individuals that Balboa has alleged are guarantors of a Balboa IPAs. Members of Subclass Four are not receiving releases of contested claims in the same manner by virtue of this settlement. That is because none had IPA guarantees with Ascentium or Univest, although members of Subclass Four are agreeing to release any claims against the Settling Defendants. However, the Settling Defendants agree to total payments of up to $390,000.00 to these doctors who comprise Subclass Four.

### 1.    The Role of the Court

Rule 23(e) of the Federal Rules of Civil Procedure requires judicial approval for any compromise of claims brought on a class basis. Approval of a proposed settlement is a matter within the broad discretion of the district court.[3] "Approval of a class action settlement involves a two-step process. First, the Court makes a preliminary fairness evaluation of the proposed terms of settlement submitted by counsel."[4] "Second, if the Court determines that the settlement is fair, the Court directs that notice pursuant to Rule 23(e) be given to the class members at a formal fairness hearing, at which arguments and evidence may be presented."[5]

### 2.    The Proposed Settlement Class May Be Certified

Prior to approval of a settlement, the Court should determine that the proposed Settlement Class is a proper class for settlement purposes.[6] The Court has great discretion in determining whether to certify a class.[7] The Court may certify a class where the plaintiff demonstrates that

---

[3] See *Reed v. General Motors Corp.*, 703 F.2d 170, 172 (5th Cir. 1983).
[4] *McNamara v. Bre-X Minerals Ltd.*, 214 F.R.D. 424, 426 (E.D. Tex. 2002).
[5] *Id.*; see also *Manual for Complex Litigation, Fourth* ("*Manual 4th*") § 13.14 (2010).
[6] See *Manual 4th* § 21.632; *McNamara*, 214 F.R.D. at 426-27.
[7] See *Amchem Prods. Inc. v. Windsor*, 521 U.S. 591 (1997).

the proposed class and proposed class representatives meet the four prerequisites in Rule 23(a)—numerosity, commonality, typicality, and adequacy of representation—and one of the three requirements of Rule 23(b).[8] Representative Plaintiffs request that the Court certify the Settlement Class under 23(b)(2) and 23(b)(3) because all of the requisites are present.

### A.    The Proposed Settlement Class Satisfies Rule 23(a)

#### (i)    The Class is too numerous to join all members.

The class is so numerous that joinder of all members is impracticable. Ascentium and Univest financed vast amounts in MHT "Installment Payment Plans," with $52,000,000.00 currently outstanding. Additionally, there are 279 Class Members at issue in this case.[9] In addition, the Settlement Class Members are too geographically dispersed to be easily joined into one action as MHT ran a nationwide program.[10]

#### (ii)    There are common questions of law or fact.

The commonality requirement under Rule 23(a)(2) is met where, as here, "there is at least one issue, the resolution of which will affect all or a significant number of the putative class members."[11] Allegations of a common course of fraudulent conduct—such as allegations of false and misleading statements by Defendants—generally satisfy the commonality requirement.[12]

Here, issues common to all Settlement Class Members include:

- whether the Settling Defendants are liable for deceptive trade practices, RICO violations, and/or misrepresentations in connection with the IPAs;

- whether MHT sales people represented to doctors that they were getting, at most, a line of credit for the LLC, that MHT would be primarily responsible, that the doctors

---

[8] *McNamara*, 214 F.R.D. at 428-29.
[9] See, e.g., *Mullen v. Treasure Chest Casino, LLC*, 186 F.3d 620, 624 (5th Cir. 1999) (finding a class of 100 to 150 satisfies numerosity and more than 40 raises a presumption that joinder is impracticable).
[10] See, e.g., *Eatmon v. Palisades Collection, LLC*, 2010 WL 1189571, at *4 (E.D. Tex. 3/5/2010).
[11] *Lightbourn v. County of El Paso,* 118 F.3d 421, 426 (5th Cir. 1997).
[12] See*, Schwartz v. TXU Corp*., 2005 U.S. Dist. LEXIS 27077, *47-48 (N.D. Tex. 2005).

would never have to make a payment, and that no more than one line of credit would be drawn upon until a nurse practitioner team was fully operational;

• whether the Settling Defendants are liable for the actions of MHT salespeople who were utilized to sign Settlement Class Members to IPAs;

• whether the MHT, Univest, or Ascentium brochures and written materials contained untrue statements or omissions of material fact;

• whether the Ascentium or Univest IPAs are legally enforceable; and

• whether Settlement Class Members are entitled to rescission or damages.

### (iii)    The Representative Plaintiffs' claims are typical.

The typicality requirement is satisfied because Representative Plaintiffs' claims arise from the same course of conduct and assert the same legal theories as the claims of Settlement Class Members.[13] Like every Settlement Class Member, Representative Plaintiffs were duped into participation in the MHT Program and IPAs by means of untrue statements and omissions of material fact. Like every Settlement Class Member, Representative Plaintiffs remain on the books of Defendants as having guaranteed alleged outstanding indebtedness. To succeed on the merits, Representative Plaintiffs and Settlement Class Members have to prove the same or similar untrue statements and omissions of material fact.[14]

### (iv)    The Representative Plaintiffs adequately represent the class.

Representative Plaintiffs have adequately represented the interests of the class and have retained counsel qualified to pursue the litigation.[15] The adequacy requirement is met where "(1)

---

[13] See *James v. City of Dallas*, 254 F.3d 551, 571 (5th Cir. 2001) (typicality requires only that "the class representative's claims have the same essential characteristics of those of the putative class."); *Eatmon*, 2010 WL 1189571, at *6 ("If the claims arise from a similar course of conduct and share the same legal theory, factual differences will not defeat typicality.").

[14] See, e.g., *Longden v. Sunderman*, 123 F.R.D. 547, 553, 556-57 (N.D. Tex. 1988) (defendants engaged in a "common course of conduct through a uniform sales plan involving PPMs that were the same or very similar in their misleading or omitted information").

[15] See Class Counsel CVs, R.Doc. 59- 2. See *Unger v. Amedisys, Inc.*, 401 F.3d 316, 320 (5th Cir. 2005).

the named plaintiffs' counsel will prosecute the action zealously and competently; (2) the named plaintiffs possess a sufficient level of knowledge about the litigation to be capable of taking an active role in and exerting control over the prosecution of the litigation; and (3) there are no conflicts of interest between the named plaintiffs and the absent class members."[16]

Representative Plaintiffs and counsel have fairly and adequately represented and protected the interests of all Settlement Class Members, demonstrated by the vigorous prosecution of this litigation. Counsel invested significant resources to represent the Settlement Class and have zealously prosecuted this case, seeking a class-wide restraining order to end the MHT victimization scheme, engaging in fact-finding that included hundreds of hours of interviews, reviewing thousands of documents, and communicating regularly with Plaintiffs, class members, and lawyers for putative class members who have retained individual counsel. Representative Plaintiffs have also demonstrated that they can direct the prosecution of the class claims and have "an adequate layperson's understanding of the factual and legal bases of this action."[17] There is one Representative Plaintiff for each of the four subclasses.[18]

**B.     The Proposed Settlement Class Satisfies Rule 23(b)(2).**

The proposed settlement includes class-wide injunctive relief to (i) refrain from any negative credit reporting against any Potential Class Member for alleged indebtedness up to Final Judgment; (ii) retract any extant negative credit reporting for anything prior to Final Judgment; and (iii) refrain from any further collection efforts or negative credit reporting against any Potential Class Member. See R. Doc. 59-1 ¶ 22(B). Rule 23(b)(2) certification is appropriate where class members have been harmed in essentially the same way by the defendant's acts,

---

[16] *Hamilton v. First Am. Title Ins. Co.*, 266 F.R.D. 153, 163-64 (N.D. Tex. 2010).
[17] *Id.* at 164.
[18] Each will be present at the Fairness Hearing and will be prepared to testify should the Court require live testimony in lieu of the declarations Class Counsel intends to submit to the Court prior to the Fairness Hearing.

thereby making injunctive relief appropriate with respect to the class as a whole.[19] The requirements are met here as Plaintiffs allege class wide harm in the collection practices and Defendants have agreed to refrain from taking actions as to the class as a whole.

### C.    The Proposed Settlement Class Satisfies Rule 23(b)(3).

This class settlement can be effectively managed. The proposed relief is readily ascertainable as to each Class Member and may be administered without difficulty. Discrete injunctive relief has been agreed upon, and the details of the contested claims being released as to each member is set out in the schedules attached to proposed Final Approval Order.

However, before certifying a class under Rule 23(b)(3), a court must determine that "questions of law or fact common to the members of the class predominate over any questions affecting only individual members and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."[20] This Court may affirmatively make such determinations here.

### (i)    The Proposed Settlement Class satisfies Rule 23(b)(3)'s predominance requirement.

"The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation."[21] "In order to 'predominate,' common questions must constitute a significant part of the individual cases."[22] "Predominance is a test

---

[19] *DeHoyos v. Allstate Corp.*, 240 F.R.D. 269, 284 (W.D. Tex. 2007) (finding certification under rule 23(b)(2) appropriate because defendant "has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole."); *Aron v. Crestwood Midstream Partners LP*, 2016 U.S. Dist. LEXIS 152427, *25 (S.D. Tex. 2016)(certifying under rule 23(b)(2) where plaintiff sought injunctive relief for material omissions in a proxy statement on behalf of similarly situated unitholders).

[20] *Madison v. Chalmette Refining, L.C.C.*, 637 F.3d 551, 555 (5th Cir. 2011).

[21] *Amchem*, 521 U.S. at 623.

[22] *Jenkins v. Raymark Indus., Inc.*, 782 F.2d 468, 472 (5th Cir. 1986).

readily met in certain cases alleging consumer or securities fraud or violations of the antitrust laws."[23] Regarding the predominance requirement, the Fifth Circuit has written:

> Determining whether the plaintiffs can clear the predominance hurdle set by Rule 23(b)(3) requires district courts to consider how a trial on the merits would be conducted if a class were certified. This, in turn, entails identifying the substantive issues that will control the outcome, assessing which issues will predominate, and then determining whether the issues are common to the class, a process that ultimately prevents the class from degenerating into a series of individual trials.[24]

The Fifth Circuit has found predominance in a fraudulent scheme context in the RICO case of *Torres v. S.G.E. Mgmt., L.L.C.*[25] holding: "In sum, we conclude that if the Plaintiffs prove that the Defendants operated a fraudulent pyramid scheme, a jury may reasonably infer from the Plaintiffs' payments to join [] that they relied on [] implicit representation of legitimacy, when in fact it was a fraudulent pyramid scheme."

In *Billitteri v. Sec. Am., Inc.*, this District Court dealt with a securities fraud case and was "convinced that there are sufficient common class-wide issues and questions that are prevalent."[26] At trial, the class members would be faced with common questions of fact, as the "case involves misrepresentations or omissions made regarding the same investments and similar PPMs issued by those organizations. These identical or near-identical alleged misrepresentations or omissions 'are not only significant but pivotal' to the class members' claims."[27]

The class was subject to the same scripted sales pitch by MHT salespeople including the following misrepresentations that: (1) no doctor would be bound to pay anything back; (2)

---

[23] *Amchem*, 521 U.S. at 625.
[24] *Madison*, 637 F.3d at 555.
[25] 838 F.3d 629, 646 (5th Cir. Tex. 9/30/2016)
[26] 2011 U.S. Dist. LEXIS 92713, 32-33 (N.D. Tex. 8/4/2011).
[27] *Id.* (citing *Eatmon*, 2010 WL 1189571, at *8 (allowing class action where a defendant is alleged to have acted in the "same basic manner" towards an entire class) and *In re Dell, Inc.*, 2010 WL 2371834, at *7 (W.D. Tex. 7/11/2010) (holding predominance requirement to be met when analysis of fraudulent misrepresentation or omission would be similar for each class member)). *Schwartz*, 2005 U.S. Dist. LEXIS 27077, *54 (finding predominance because alleged misrepresentations "were uniformly disseminated.")

financing companies would provide lines of credit to be available for start-up costs and drawn upon only after the assignment of a nurse practitioner; (3) that only one line would be drawn upon until a second nurse practitioner team was established; (4) a "license" for each "practice" can be returned at any time through a "novation" in which it is resold to another willing participant; (5) MHT handles everything other than supervising the medical treatment; (6) the cost of proprietary software and the "practice" is included in the license fee due to CMS requirements; and (7) there are *no* fees or interest associated with the acquisition of the license/software/practice. Identical and deceptive written materials and pro formas were employed for use by MHT salespeople. MHT salespeople also used uniformly dodgy tactics to induce class members to sign IPAs by misrepresenting the terms of these documents.[28]

### (ii) The Proposed Settlement Class satisfies Rule 23(b)(3)'s superiority requirement.

As to superiority under Rule 23(b)(3), that requirement is met when a class action "is superior to other available methods for fairly and efficiently adjudicating the controversy."[29] "[T]he superiority analysis requires an understanding of the relevant claims, defenses, facts, and substantive law presented in the case."[30] "Among the interests that the Court must consider are the interests of class members in individually controlling the prosecution and defense of separate actions, the extent and nature of any litigation concerning the controversy already begun by or against class members, the desirability or undesirability of concentrating the litigation of the claims in the particular forum, and the likely difficulties in managing a class action."[31] When "[c]onfronted with a request for settlement-only class certification, a district court need not

---

[28] See Massey Declaration in Appendix.
[29] Fed. R. Civ. P. 23(b)(3).
[30] *In re Wilborn*, 609 F.3d 748, 755 (5th Cir. 2010).
[31] *Billitteri*, 2011 U.S. Dist. LEXIS 92713 (*citing* Fed. R. Civ. P. 23(b)(3)).

inquire whether the case, if tried, would present intractable management problems, … for the proposal is that there be no trial."[32]

The superiority requirement allows certification when it is reasonably thought to be the most practical and sensible manner of proceeding. The Court considers: (i) the interest, if any, that class members have in controlling the prosecution of separate actions; (ii) the pendency of other litigation involving class members; (iii) the desirability of concentrating the litigation in a single forum; and (iv) the ease or difficulty of managing a class action.[33]

This case also meets the superiority test of Rule 23(b)(3). The case involves a national fraudulent scheme perpetrated by MHT and its principals. Ascentium, Univest, and Balboa are three financing companies MHT used to fund its fraudulent sale of software and licenses. Univest and Balboa have initiated lawsuits in Pennsylvania and California respectively to collect on personal guaranties against Class Members. There is also pending litigation against Defendants by class members in different forums. The present case is the first and only class action. Handling this case as a class is readily manageable given the cohesiveness of the victims of the scheme who form the class and the identical sales pitch and misrepresentations employed in binding the victims to IPAs.[34]

> D.    **The Court Should Appoint Couhig Partners, LLC, Carter, Scholer, PLLC, and The Crouch Firm, PLLC as Settlement Class Counsel Under Rule 23(g)**

Under Rule 23, "a court that certifies a class must appoint class counsel … [who] must fairly and adequately represent the interests of the class."[35] In making this determination, the Court must consider counsels': (1) work in identifying or investigating potential claims; (2)

---

[32] *Id.* (*citing Amchem*, 521 U.S. at 620).
[33] *Shaw v. Toshiba Am. Info. Sys.*, 91 F.Supp.2d 942, 958 (E.D. Tex. 2000) (*citing* Fed. R. Civ. P. 23(b)(3)(A)-(D)).
[34] See Massey Declaration from Appendix.
[35] Fed. R. Civ. P. 23(g)(1)(A), (B).

experience in handling class actions or other complex litigation, and the types of claims asserted in the case; (3) knowledge of the applicable law; and (4) resources committed to representing the class.[36] Couhig Partners, LLC, Carter, Scholer, PLLC, and The Crouch Firm, PLLC have significant experience in litigating class actions and deceptive trade practices cases and, over the fifteen months, have diligently litigated this action, dedicated substantial resources to the investigation and prosecution of these claims, and demonstrated their knowledge of the laws at issue. Therefore, the Court should appoint Couhig Partners, LLC, Carter, Scholer, PLLC, and The Crouch Firm, PLLC to serve as Settlement Class Counsel pursuant to Rule 23(g).

### 3.    The Settlement Warrants Final Approval

The standard for reviewing a proposed settlement of a class action is whether the settlement is "fair, adequate and reasonable" and has been entered into without collusion between the parties.[37] The Court must determine whether the proposed compromise represents a "reasonable evaluation of the risks of litigation."[38] The Fifth Circuit has often stated that settlements "will be upheld whenever possible because they are a means of amicably resolving doubts and preventing lawsuits."[39] Settlements of class action are "particularly favored" and are not to be rejected lightly by the courts.[40] In the context of class actions, "there is an overriding public interest in favor of settlement" because such suits "have a well-deserved reputation as being the most complex."[41] Thus, in determining approval, courts do not decide the merits of the action or substitute their own judgment for that of the parties or that of counsel.[42]

---

[36] Fed. R. Civ. P. 23(g)(1)(A).
[37] *Cotton v. Hinton,* 559 F.2d 1326, 1330 (5th Cir. 1977). See also *Ibarra v. Texas Employment Comm'n*, 823 F.2d 873, 878 (5th Cir. 1987) and *Maher v. Zapata Corp.,* 714 F.2d 436, 454 (5th Cir. 1983).
[38] *Florida Trailer & Equipment Co. v. Deal,* 284 F.2d 567, 571 (5th Cir. 1960).
[39] *Miller v. Republic Nat'l Life Ins. Co.,* 559 F.2d 426, 428 (5th Cir. 1977).
[40] *Maher,* 714 F.2d at 455.
[41] *Cotton,* 559 F.2d at 1331.
[42] See *Maher,* 714 F.2d at 455.

13

The object of a compromise is "to avoid the determination of sharply contested and dubious issues."[43] Parties offering the settlement are not required to "justify each term of settlement against a hypothetical or speculative measure of what concessions might have been gained; inherent in compromise is a yielding of absolutes and an abandoning of highest hopes."[44] Fifth Circuit courts have consistently held that public policy favors the settlement of class actions.[45] A swift resolution of this dispute thus will avoid complex and protracted litigation, provide valuable relief to the Class, and "foster[] the goals of certainty, finality and economy, which lie at the heart of our general preference for settlement of class actions."[46]

There are six focal facets to be examined by the Court: (1) the existence of fraud or collusion in the settlement; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the proceedings/amount of discovery completed; (4) the probability of plaintiffs' success on the merits; (5) the range of possible recovery; and (6) the opinions of the class counsel, class representatives, and absent class members.[47]

### A.    There Are No Grounds to Doubt The Fairness Of The Settlement, Which Is The Product Of Extensive, Arm's-Length Negotiations

The first consideration in the analysis is whether "the proposed settlement appears to be the product of serious, informed, non-collusive negotiations."[48] Courts give substantial weight to the experience of the attorneys who prosecuted the case and negotiated the settlement.[49] When a settlement is negotiated at arm's length by experienced counsel, there is a presumption that it is

---

[43] *Young v. Katz,* 447 F.2d 431, 433 (5th Cir. 1971).
[44] *Cotton*, 559 F.2d at 1330.
[45] *Cotton*, 559 F.2d at 1331.
[46] *Schwartz*, 2005 U.S. Dist. LEXIS 27077, *76-77 (citing *Berry v. School Dist.*, 184 F.R.D. 93 (S.D. Tex. 1998)).
[47] *Moore v. Halliburton Co*., 2004 U.S. Dist. LEXIS 18187 (N.D. Tex., Oct. 7, 2004) (*citing Reed v. General Motors Corp.*, 703 F.2d 170, 172, (5th Cir. 1983)).
[48] *In re Shell Oil Refinery*, 155 F.R.D. 552, 555 (E.D. La. 1993).
[49] See *Reed*, 703 F.2d at 175; *McNamara*, 214 F.R.D. at 430-31.

14

fair and reasonable.[50] Courts may also consider whether settlement was reached with the assistance of an experienced mediator.[51]

Here, the proposed settlement is the product of extensive, arm's-length negotiations that included a mediation session in Dallas before mediator Christopher M. Nolland, and numerous telephonic sessions. Counsel for the parties met and communicated on many occasions. The negotiations were informed by knowledge that Representative Plaintiffs and their counsel gained by several hundred hours of interviewing potential witnesses and reviewing thousands of pages of documents obtained from public sources, Ascentium, the Non-Setting Defendants, and third parties. Based on their familiarity with the factual and legal issues, the parties were able to negotiate a fair settlement that considered the costs and risks of continued litigation.[52]

In reaching the settlement, all legal and factual issues were evaluated, and all alternatives were considered. The negotiations were hard-fought and arm's-length at all times and have produced a result that the Settling Parties believe to be in their respective best interests. Furthermore, the proposed Settlement provides no preferential treatment for Representative Plaintiffs. Those receiving releases of their contested claims will receive those releases in levels equal to all other Settlement Class Members who fall into three broad Subclasses.

If the Court grants final approval and the proposed settlement becomes binding on all Settlement Class Members, the claims against the Released Parties will be released and dismissed. Because the settlement does not resolve claims against other Defendants in the case,

---

[50] See *In re the Mills Corp. Sec. Litig.*, 265 F.R.D. 246, 255 (E.D. Va. 2009) ("Negotiations were sufficiently thorough, contentious, and at arm's length to ensure the propriety of Class Counsel's decision to enter into the settlement and the proceedings leading thereto."); *Shell Oil Refinery*, 155 F.R.D. at 556.
[51] See *Sandoval v. Tharaldson Employee Mgmt.*, 2010 WL 2486346, at *6 (C.D. Cal. 6/15/2010); *Neff v. Via Metro. Transit Auth.*, 179 F.R.D. 185, 211 (W.D. Tex. 1998).
[52] See Massey Declaration in Appendix.

the class action will continue against the Non- Settling Defendants, and the Court will retain

continuing jurisdiction over the enforcement of the Settlement Agreement.

### B.    The Complexity, Expense And Likely Duration of The Litigation

This consideration weighs heavily in favor of approving the settlement. As mentioned

above, MHT perpetuated a national scheme to defraud the approximately 279 Class Members.

Defendant financing companies have initiated collection claims against several class members

based on personal guarantees. The duration of litigation is further protracted by MHT's

institution of a Chapter 7 bankruptcy. Numerous depositions, extensive discovery, and

considerable motion practice would have to be undertaken at considerable expense.

Litigation relating to such fact-intensive and difficult-to-prove claims would thus be

extraordinarily complicated and time consuming, and potentially require expert testimony.[53] The

alleged misconduct includes a substantial number of complex issues, the most difficult of which

to prove would be whether Defendants acted with fraudulent intent. A trial of this litigation

would likely require months of testimony, the introduction of hundreds of exhibits dealing with

complex financial matters, vigorously contested motion practice, and the expenditure of

considerable out of pocket costs. Ultimately, if Plaintiffs were to succeed at trial, they could

expect the accompanying delay of a vigorous appeal.[54] In contrast, the proposed settlement

grants Class Members relief without the risk inherent in continuing this litigation.[55]

---

[53] *Schwartz,* 2005 U.S. Dist. LEXIS at *62 (citing *In re Elec. Data Sys. Corp. Secs. Litig.*, 226 F.R.D. 559, 571 (E.D. Tex. 2005)); See also *Oscar Private Equity Invs. v. Holland*, 2005 U.S. Dist. LEXIS 6525, *34 (N.D. Tex. 2005); *Nathenson v. Zonagen, Inc.*, 267 F.3d 400, 412 (5th Cir. 2001); *Bolton v. Tesoro Petroleum Corp.*, 871 F.2d 1266, 1278 (5th Cir. 1989).
[54] *Schwartz,* 2005 U.S. Dist. LEXIS at *62.
[55] *Id.*

16

## C.    The Stage of the Proceedings and the Amount of Discovery Completed

The limited amount of formal discovery in this case should be no impediment to the final approval of this partial settlement. Formal discovery is not a prerequisite to settlement.[56] There is "no precise yardstick to measure the amount of litigation that the parties should conduct before settling."[57] There is no need not for parties to "have engaged in extensive discovery."[58] "Unless Lead Counsel settled while 'groping in darkness' the lack of formal discovery will not hinder the settlement."[59] Extensive formal discovery is not a "necessary ticket to the bargaining table."[60]

As set forth in the Massey Declaration, Class Counsel conducted a thorough investigation of the facts during the litigation. Counsel reviewed and analyzed voluminous records, which were produced by defendants and non-parties, interviewed dozens of potential witnesses, and consulted with experts throughout the litigation. The extensive briefing that occurred confirm Plaintiffs detailed understanding of the legal and factual issues that were in dispute and the risks of continued litigation. It was only through extensive preparation and effort that the parties reached an agreement to settle. At the point the parties reached a meeting of the minds, they had a "full understanding of the legal and factual issues surrounding the case"[61]

---

[56] *In re Corrugated Container Antitrust Litig.*, 643 F.2d 195, 211 (5th Cir. 1981).

[57] *Schwartz,* 2005 U.S. Dist. LEXIS 27077, at *64.

[58] *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 176 (S.D.N.Y. 2000), *aff'd sub nom. D'Amato v. Deutsche Bank*, 236 F.3d 78 (2d Cir. 2001) (citation omitted); *see also Levell v. Monsanto Research Corp.*, 191 F.R.D. 543, 556-57 (S.D. Ohio 2000) (approving settlement in which counsel relied primarily on informal discovery); *D'Amato*, 236 F.3d at 87 ("although no formal discovery had taken place, the parties had engaged in an extensive exchange of documents and other information . . . thus, the stage of the proceedings' factor . . . weighed in favor of settlement approval"); *Linney v. Cellular Alaska Partnership*, 151 F.3d 1234, 1239 (9th Cir. 1998) (formal discovery is not necessary "where the parties have sufficient information to make an informed decision about settlement.").

[59] *Schwartz,* 2005 U.S. Dist. LEXIS 27077, *64.

[60] *In re Corrugated Container Antitrust Litigation,* 643 F.2d 195 at 211; *See* also *Schwartz,* 2005 U.S. Dist. LEXIS at *66 ("The Settlement Agreement follows several phases of informal discovery … that provided Lead Counsel and their experts a comprehensive understanding of the facts and issues.")

[61] *Manchaca v. Chater,* 927 F.Supp. 962, 967 (E.D. Tex. 1996).

### D.    The Probability of Plaintiffs' Success on the Merits

Plaintiffs obviously feel strongly that the class members were the victims of fraud and should not be bound to the agreements that were fraudulently induced. Plaintiffs have developed substantial evidence in support of these claims. However, the Settling Defendants deny any such role in fraud and point to the clear language of the signed documents, which disavowed any responsibility for MHT or its acts. Plaintiffs maintain, despite Settling Defendants' position, that there is a strong probability of prevailing on Plaintiffs' suit for rescission. However, in recognition of the uncertainties of litigation as well as the time, effort, and expense that would be involved in any effort to rescind the contracts at issue, Plaintiffs confidently assert that this settlement is merited and in the best interests of the class.

### E.    The Settlement Falls Within the Range of Possible Approval.

The proposed Settlement also falls within the range of possible approval. Ascentium and Univest will not collect over $37,000,000 of claimed debt allegedly secured by guarantees of the Settlement Class Members. This represents approximately 70% of the amounts Ascentium and Univest consider due and outstanding from the Settlement Class Members. Class Counsel, who have a great deal of experience in the prosecution and resolution of complex class action litigation, have carefully evaluated the merits of this case and the proposed settlement. Even if the matter were to proceed to trial, Class Counsel know from experience that the apparent strength of their case is no guarantee against a defense verdict. Furthermore, the Settlement involves only the release of Univest, Ascentium, and McKenzie, with Plaintiffs reserving all claims as to Non-Settling Defendants. The Settlement further includes certain injunctive relief.

An allocation analysis is not directly at issue in this settlement, which predominantly consists of consideration other than a fund to distribute to class members. However, utilizing the

18

governing principles applicable to distributed fund class settlements is useful to demonstrate the fairness of this settlement. A district court has broad discretion regarding the allocation of a class action settlement.[62] A just allocation necessitates that the class members who lost the most should stand to gain the most from a settlement.[63] Any allocation should consider the basis of recognized loss and the most likely provable damages at trial.[64] At the final approval stage, "[a]n allocation formula need only have a reasonable, rational basis [to warrant approval], particularly if recommended by 'experienced and competent' class counsel."[65]

The Settlement Agreement provides for the release of contested claims pursuant to three Subclasses. The primary distinction between subclasses is the time frame in which each allegedly entered IPAs—i.e. pre-2016 or post-2016. This distinction takes into consideration such factors as the degree of the MHT fraudulent scheme and knowledge of the Defendants, the extent and duration of the Class Members' participation in the MHT program, and the level of outstanding payments owed under IPAs—all premised on the extensive evidence obtained and developed by Class Counsel.[66] The preeminent and controlling factor in the settlement negotiations was that any negotiated payment obligations of the subclasses must be fair, reasonable, fully considered, and based on fact. Class counsel believe that the settlement terms meet those essential criteria and were arrived at only after lengthy negotiations.

Moreover, all subclasses have the additional consideration in the form of an early payment option which would result in a 20% discount of the applicable termed settlement

---

[62] *Marcus v. J.C. Penney Co.*, 2017 U.S. Dist. LEXIS 214427, *15-16 (E.D. Tex. 2017).
[63] *Id.* (citing *In re Dell, Inc., Sec. Litig.*, 2010 U.S. Dist. LEXIS 58281, *33-*34 (W.D.Tex. 2010)).
[64] *Id.* at *16.
[65] *In re Am. Bank Note Holographics, Inc., Sec. Litig.*, 127 F. Supp. 2d 418, 430 (S.D.N.Y. 2001).
[66] See Massey Declaration.

19

amount. None of the IPAs provided for this benefit, and it was achieved solely due to Class Counsel's persistence, efforts and ultimately successful negotiations.

The payments in favor of Members with Balboa IPAs are determined by the amount of IPA guarantees each member had. The Settling Defendants staunchly contested any role in the entry into IPAs by the Balboa Class Members and only agreed to provide any consideration to this subclass to obtain for global peace.[67]

The members in Subclasses One, Two, and Three are potentially liable to the Settling Defendants for up to four IPAs, but in settlement are being asked to pay what essentially amounts to either 100% or 80% of one IPA (with the benefit of a further lump sum discount). The claims of Subclass Four against the Settling Defendants are essentially for their role in the conspiracy in inducing each to sign a Balboa IPA after interaction with a MHT salesperson. These members are being compensated $6,500 per IPA with some receiving $26,000. Subclass Four members reserve their claims for rescission of the IPA guarantees against Balboa. Moreover, and importantly, all Class Members reserve claims against MHT and Postle. The proposed Settlement with regards to each subclass falls within the range of possible final approval. Accordingly, the Court should grant final approval.

F.    The Opinions of the Class Counsel, Class Representatives, and Absent
      Class Members

The Fifth Circuit has stated that courts must rely to a large degree on the judgment of competent counsel, terming such counsel the "linchpin" of an adequate settlement.[68] Thus, if experienced counsel determine that a settlement is in the class's best interest, the "attorney's views must be accorded great weight."[69] In deciding to approve a settlement, "the judge should keep in

---

[67] See Massey Declaration.
[68] *Reed,* 703 F.2d at 175.
[69] *Pettway v. American Cast Iron Pipe Co.,* 576 F.2d 1157, 1216 (5th Cir. 1978).

mind the unique ability of class and defense counsel to assess the potential risks and rewards of litigation, and a presumption of correctness is said to attach to a class settlement reached in arm's length negotiations between experienced, capable counsel after meaningful discovery."[70]

Class Counsel asserts that they have negotiated the best settlement that they could obtain under the circumstances.[71] Bringing this case to an expedited conclusion benefitted the class members many of whom had high levels of anxiety regarding the uncertainty of what they may owe. Ascentium and Univest were represented by competent and aggressive counsel who strongly preferred to engage individual suits against class members. Moreover, the legal costs that would likely be incurred while litigating individual matters would probably approach the actual proposed settlement amounts. There was a risk that under certain language in the IPAs, class members would be called upon to pay Settling Defendants' legal expenses and costs, which likely would be quite substantial. Bringing the matter to an early conclusion, rather than expending significant time, valuable Court time and resources, and litigant and counsel energy and expense, provides a significant benefit to the class, litigants, Court and legal system.[72]

Finally, the Court in *In re Oil Spill by Oil Rig Deepwater Horizon* noted: "While the fact that a relatively small percentage of the Class Members objects to a proposed settlement is not dispositive, '[c]ourts have taken the position that one indication of the fairness of a settlement is the lack of or small number of objections."[73] As discussed in greater detail below, of the 279 class members there are only ten distinct objections on behalf of fourteen class members.[74] The

---

[70]*Lelsz v. Kavanagh*, 783 F. Supp. 286, 297 (N.D. Tex. 1991) .

[71] See Massey Declaration.

[72] *Id.*

[73] 910 F. Supp. 2d 891, 938 (E.D. La. 2012); See also, *In re Cardizem CD Antitrust Litig*., 218 F.R.D. 508, 527 (E.D. Mich. 2003) ("That the overwhelming majority of class members have elected to remain in the Settlement Class, without objection, constitutes the 'reaction of the class,' as a whole, and demonstrates that the Settlement is 'fair, reasonable, and adequate.'").

[74] *See, e.g., Reed.,* 703 F.2d at 174 (settlement approved over objection of 40 percent of class); *TBK Partners, Ltd. v. Western Union Corp.,* 675 F.2d 456 (2d Cir. 1982) (settlement approved over objection of 55 percent

Settlement Administrator's report indicates approximately 78 unique opt outs out of 279 members.[75] While the final figure will not be determined until the Fairness Hearing, the fact that members exercised their right to opt out reveals that those who declined to do so are desirous of the benefits of this Settlement and consider it fair.[76]

## IV.    THE PROPOSED PLAN OF CLASS NOTICE

Rule 23(e)(1) requires the Court "to direct notice in a reasonable manner to all class members who would be bound by the [settlement] proposal."[77] The parties mailed an individual notice to all persons who fall within the definition of the Settlement Class, and who can be identified. The proposed method of notice comports with the requirements of due process and the heightened standards for notice for Rule 23(b)(3) classes.[78] The notice provision provided gold standard mail notice with multiple protections and due diligence efforts.

"The fairness hearing notice should alert the class that the hearing will provide class members with an opportunity to present their views on the proposed settlement and to hear arguments and evidence for and against the terms."[79] The notice "should tell objectors to file written statements of their objections with the clerk of court by a specified date in advance of the hearing."[80] The notice must "contain an adequate description of the proceedings written in objective, neutral terms that, insofar as possible, may be understood by the average absentee

---

of class); *Cotton,* 559 F.2d at 1333 (settlement approved over objections of counsel purporting to represent almost 50 percent of class); *Klein v. O'Neal, Inc.,* 705 F. Supp. 2d 632, 661 (N.D. Tex. 2010) ("significant portion of the class"); and *Lelsz,* 783 F. Supp. at 297-298 (objections from approximately 6.5 percent of the class members).

[75] Class Counsel will file this report upon finalization. This includes 7 from the 26 member subclass 4 and the balance from subclasses 1-3.

[76] *Cobell v. Salazar,* 679 F.3d 909, 920 (D.C. Cir. 2012) ("Indeed, the existence of the opt-out alternative effectively negates any inference that those who did not exercise that option considered the settlement unfair.")

[77] Fed. R. Civ. P. 23(e)(1).

[78] *See* Fed. R. Civ. P. 23(c)(2)(B).

[79] *Manual 4th* § 21.633.

[80] *Id.*

class member."[81] The notice must also "contain information that a reasonable person would consider to be material in making an informed, intelligent decision of whether to opt out or remain a member of the class and be bound by the final judgment."[82]

The mailed notice satisfied the requirements because it described the nature, history, and status of the litigation; set forth the definition of the Settlement Class; described the Settlement Class; stated the class claims and issues; said that Settlement Class Members may enter an appearance through their own counsel; provided a phone number that a class member could call for information; provided a link to a website with further information and contact for class counsel and the Settlement Administrator (www.melbymhtsettlement.com); described how to exclude oneself; described how to object; and advised of the binding effect of the settlement approval proceedings on Settlement Class Members. The notices complied with the recommendations published by the Federal Judicial Center and were approved by the Court. In addition, an individual notice was sent to each class member. In the case of Subclasses One, Two, and Three, the individual notice reflected the amount of the guaranty obligation and the terms of the settlement payments to obtain a release of the alleged guaranty obligations. In the case of Subclass Four, the individual notice reflected the amount of the proposed cash payment. This notice also referenced the settlement website and a phone number that could be called for further information. The individual notice also advised of the binding effect of the settlement approval proceedings on Settlement Class Members, and of the rights to "opt out" or object. In

---

[81] *In re Nissan Motor Corp. Antitrust Litig.*, 552 F.2d 1088, 1104 (5th Cir. 1977).
[82] *Id.* at 1105; *see also In re Katrina Canal Breaches Litig.*, 628 F.3d 185, 197-98 (5th Cir. 2010) ("Notice … requires that class members be given information reasonably necessary for them to make a decision whether to object to the settlement.").

all, approximately 285 unique notices were issued. As some members had multiple addresses, 301 notices were mailed with another 25 notices later being mailed to updated addresses.[83]

## V.    CLASS MEMBER OBJECTIONS

Fourteen class members have filed ten distinct objections.[84] Of those, at least three (R. Docs. 73, 76 and 85), indicated that they may opt out which would strip them of standing to object.[85] These objectors raise the same three grounds, however, as six other objectors (R.Docs.74, 75, 77, 78, 88, and 89), which are that the settlement would be palpable if (a) it included language from a tax attorney starting that there was no personal liability for any taxes for any class member and that settlement payments are tax deductible; (b) all attorney's fees incurred by members should collected from Ascentium in this class action; and (c) the settlement payments be halved with $50,000 cap on any member's exposure. Another objector (R. Doc. 83) is a nurse practitioner who suggests she left the clinic at issue and should not be a member.

Class Counsel engaged a CPA as a consultant, who provided background and general opinions. CPA Courcelle discussed and opines that there should be no tax consequence to the Class Members as a result of the settlement at issue, subject to each member's individual tax history and barring any unknown special circumstances.[86] Class Counsel has also obtained from Univest and Ascentium written confirmation that neither intends to file 1099s with regard to any Class Member as a result of the settlement payments.[87] Class Counsel is aware of no impediment to any Class Member's individual attorney making an application to this Court for an award of common benefit fees.[88] Finally, Class Counsel sought to obtain a settlement involving the least

---

[83] See Settlement Administrator's Report, which will be filed upon finalization.
[84] See R.Docs. 73-79, 83, 85 (resubmitting R. Doc. 75 but suggesting the objector would now opt out), 88 (apparently untimely), and 89 (apparently untimely).
[85] *In re Oil Spill*, 910 F. Supp. 2d at 936.
[86] *See* Massey Declaration.
[87] *Id*.
[88] *Id*.

amount of payments from Subclasses One, Two, and Three in exchange for a full release of all alleged guaranty obligations, believes it obtained Settling Defendants' best offer, and believes in their professional judgment that they have negotiated a fair and adequate settlement on behalf of the class. Class Counsel has made reasonable efforts to communicate to the class.

The general theme of the other objections is that there are defenses to the claims being released and that the settlement payments at issue should be lower or that unique circumstances warrant special consideration for the objector. However, a court should not "dismantle this settlement for the sake of one class member's unique demands, particularly when the class member . . . had the right (and the means) to opt out and pursue its individual claims without disturbing the settlement for the rest of the class."[89] Courts have recognized such objectors have a simple remedy: opt out.[90] Where a settlement is fair, reasonable, and adequate, the Court is "not authorized to insist upon changes that, in its judgment, might lead to a superior settlement."[91] Here the settlement is fair in proactively terminating costly litigation for reasonably settlement payments (a fraction of potential exposure) to be paid out of at least four years while reserving claims against Non-Settling Defendants such as MHT and Postle.

## VI.    CONCLUSION

For the foregoing reasons, Representative Plaintiffs respectfully ask that the Court grant final approval of the proposed Settlement and enter a proposed Order certifying the class for settlement purposes and granting final approval of settlement.

(Signature Page to Follow)

---

[89] *In re Oil Spill*, 910 F. Supp. 2d at 936.
[90] *Id.* at 941(also noting "Settlements are compromises, and the fact that some class members wish BP had paid more compensation is no reason to reject the Settlement.").
[91] *Id.* at 936 (citing *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998)); *Dandridge v. Jefferson Parish Sch. Bd.,* 2009 WL 24461, at *3 (E.D. La. Jan. 5, 2009) ("the Court may not require the parties to accept a settlement or a consent order to which they have not agreed.")

Date:   March 5, 2018

Respectfully submitted,

/s/ Jonathan P. Lemann
E. Leon Carter
Texas Bar No. 03914300
lcarter@carterscholer.com
 Joshua J. Bennett
Texas Bar No. 24059444
jbennett@carterscholer.com
CARTER SCHOLER, PLLC
8150 N. Central Expy., Suite 500
Dallas, Texas 75206
Telephone: (214) 550-8188
 Facsimile: (214) 550-8185

Paul Crouch
The Crouch Firm, PLLC
Bar #05144700
5609 Masters Ct.
Flower Mound, TX 75022
Telephone: (817) 714-9820
Facsimile: (855) 886-6374

*Couhig Partners, LLC*
Robert E. Couhig, Jr.,
Texas Bar No. 04877400
Louisiana Bar Roll No 4439
Donald C. Massey,
Louisiana Bar Roll No. 14177
Jonathan P. Lemann,
Texas Bar No. 24054333
Louisiana Bar Roll No. 26380
Jeffrey T. Pastorek,
Louisiana Bar Roll No. 33309
1100 Poydras Street, Suite 1150
New Orleans, LA 70163
Telephone: (504) 588-128
Telecopier: (504) 588-9750

**ATTORNEYS FOR PLAINTIFFS**

CERTIFICATE OF SERVICE

I hereby certify that on March 5, 2018, a true and correct copy of the foregoing motion was served on all counsel of record through the Court's electronic filing system.

/s/ Jonathan P. Lemann
Jonathan P. Lemann