IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| DR. DEREK MELBY, and DANILO POLICARPIO as individuals and on behalf of all others similarly situated | § § § § | |
| Plaintiffs, | § § | Civil Action No. 3:17-CV-155-M |
| v. | § § | *consolidated with* |
| AMERICA'S MHT, INC., SCOTT POSTLE, ASCENTIUM CAPITAL, LLC, and CLIFF MCKENZIE | § § § | Civil Action Nos. 3:17-CV-732-M; 3:17-CV-868-M; and 3:17-CV-963-M |
| Defendants. | § § § § | |

**PLAINTIFFS' MOTION FOR AN AWARD OF ATTORNEYS FEES
<u>AND EXPENSES AND MEMORANDUM OF LAW IN SUPPORT</u>**

## TABLE OF CONTENTS

I.     INTRODUCTION ............................................................................................. 1

II.    MOTION FOR AN AWARD OF ATTORNEY FEES AND EXPENSES ...................... 2

   1.  THE *JOHNSON* FACTORS ........................................................................... 4

      A.  *The time and labor required* .............................................................. 4

      B.  *The novelty and difficulty of the issues* ............................................. 5

      C.  *The skill required to perform the legal services properly* .................... 6

      D.  *The preclusion of other employment* .................................................. 7

      E.  *The customary fee* ............................................................................ 7

      F.  *Whether the fee is fixed or contingent* ................................................ 8

      G.  *Time limitations imposed by the client or the circumstances* ............... 8

      H.  *The recovery amount involved and the results obtained* ..................... 8

      I.  *The experience, reputation, and ability of the attorneys* ................... 10

      J.  *The undesirability of the case* .......................................................... 10

      K.  *The nature and length of the professional relationship with the client* ............. 12

      L.  *Awards in similar cases* .................................................................. 12

   2.  CLASS COUNSEL FEE REQUEST ............................................................... 13

   3.  FEE REQUEST FOR OTHER COUNSEL FOR COMMON BENEFIT ...................... 14

   4.  EXPENSES AND INCENTIVE AWARDS ........................................................ 15

III.   CONCLUSION ............................................................................................ 17

## TABLE OF AUTHORITIES

## CASES

*Berry v. Schulman*, 807 F.3d 600 (4th Cir. Va. 2015) .................................................. 14

*Braud v. Transport Service Co. of Ill.*, 2010 WL 3283398 (E.D. La. 2010) ................................ 16

*Camp v. Progressive Corp.*, 2004 WL 2149079 (E.D. La. Sept. 23, 2004) ................................ 17

*Chesemore v. Alliance Holdings, Inc.*, 2014 WL 4415919 (W.D. Wis. Sept. 5, 2014)................ 13

*Cobb v. Miller,* 818 F.2d 1227 (5th Cir. 1987). .................................................................. 4

*Davis v. Bd. of Sch. Comm'rs of Mobile Cnty.*, 526 F.2d 865 (5th Cir. 1976)............................ 12

*DeHoyos v. Allstate Corp.*, 240 F.R.D. 269 (W.D. Tex. 2007) ................................................ 9, 13

*Fleisher v. Phoenix Life Ins. Co.*, 2015 U.S. Dist. LEXIS 121574 (S.D.N.Y. Sept. 9, 2015)...... 14

*Garza v. Sporting Goods Properties*, 1996 U.S. Dist. LEXIS 2009 (W.D. Tex. 2/6/1996)... 3, 6, 9

*Graves v. Barnes*, 700 F.2d 220 (5th Cir.1983)................................................................... 9

*Humphrey v. United Way of Texas Gulf Coast*, 802 F. Supp. 2d 847 (S.D. Tex. 2011)............... 16

*In re Avandia Marketing, Sales Practices and Products Liability Litigation*, 2012 WL 6923367 (E.D. Pa. Oct. 19, 2012)............................................................................................ 12

*In re Catfish Antitrust Litig.*, 939 F. Supp. 493 (N.D. Miss. 1996) ........................................ 16

*In re Educ. Testing Serv. Praxis Principles of Learning & Teaching Grades 7-12 Litig.*, 447 F. Supp. 2d 612 (E.D. La. 2006) ................................................................................ 16

*In Re Heartland Payment Systems, Inc.*, 851 F. Supp. 2d 1040 (S.D. Tex. 2012) ...................... 12

*In re McKesson HBOC Inc. ERISA Litig.*, 391 F. Supp. 2d 844 (N.D. Cal. 2005)...................... 17

*In re Sprint Corp. ERISA Litig.*, 443 F. Supp. 2d 1249 (D. Kan. 2006) .................................... 16

*In re Vioxx Products Liability Lit.*, 760 F. Supp. 2d 640 (E.D. La. 10/19/2013) ........................ 12

*Ingram v. Coca-Cola Co.*, 200 F.R.D. 685 (N.D. Ga. 2001) ................................................... 13

*Johnson v. Georgia Highway Exp., Inc.*, 488 F.2d 714 (5th Cir. 1974) ................................ passim

*Johnston v. Comerica Mortgage Corp.*, 83 F.3d 241 (8th Cir. 1996) ........................................ 9

*Jones v. JGC Dallas LLC*, 2014 U.S. Dist. LEXIS 177472, (N.D. Tex, 2014)............................ 16

*Jones v. Singing River Health Sys.*, 2016 U.S. Dist. LEXIS 76278 (S.D. Miss. 2016)............... 14

*Louisiana Power & Light Co. v. Kellstrom*, 50 F.3d 319 (5th Cir.), *cert. denied,* 516 U.S. 862, 116 S. Ct. 173, 133 L. Ed. 2d 113 (1995))..................................................................... 4

*McAnaney v. Astoria Fin. Corp.*, 2011 U.S. Dist. LEXIS 114768 (E.D.N.Y. 2011) .................... 9

*McClain v. Lufkin Industries Inc.*, 2010 WL 455351 (E.D. Tex. 2010) ..................................... 16

*Migis v. Pearle Vision, Inc.*, 135 F.3d 1041 (5th Cir. 1998)................................................... 4

*Quintanilla v. A & R Demolition, Inc.*, 2008 U.S. Dist. LEXIS 37449 (S.D. Tex. 2008) ........... 17

*Rodriguez v. West Publishing Corp.*, 563 F.3d 948 (9th Cir. 2009)............................................ 16

*SCA Promotions, Inc. v. Yahoo! Inc.*, 2016 U.S. Dist. LEXIS 183761 (N.D. Tex. 2016) .......... 12

*Schipper v. TXU Corp.*, 2008 U.S. Dist. LEXIS 38062 (N.D. Tex. 2008) .................................. 3, 4

*Slipchenko v. Brunel Energy, Inc.*, 2015 U.S. Dist. LEXIS 8177 (S.D. Tex. 2015).............. 13, 16

*SortiumUSA, LLC v. Hunger*, 2014 U.S. Dist. LEXIS 180323 (N.D. Tex. 2014)...................... 12

*Strong v. Bellsouth Telcoms.*, 137 F.3d 844 (5th Cir. 1998)................................................. 3

*Szijjarto v. McCarrell*, 2014 WL 555122 (S.D. Tex. Feb, 12, 2014) ....................................... 12

*Vanliner Ins. Co. v. DerMargosian*, 2014 WL 1632181 (N.D. Tex. Apr. 24, 2014) .................. 12

*Vista Healthplan, Inc. v. Warner Holdings Co. III*, 246 F.R.D. 349 (D.D.C. 2007).................... 9

*Waters v. Cook's Pest Control, Inc.*, 2012 U.S. Dist. LEXIS 99129 (N.D. Ala. July 17, 2012) .. 14

*Wolf v. Frank*, 555 F.2d 1213 (5th Cir. 1977) ................................................................. 2

**TREATISES**

*Manual for Complex Litigation, Fourth* ("*Manual 4th*") (2010) .................................................... 3

### MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR AN AWARD OF ATTORNEY'S FEES AND EXPENSES

Plaintiffs and named representatives, Dr. Derek Melby, Dr. Danilo Policarpio, Dr. David Guillot, and Dr. Jaideep Patel, ("Plaintiffs"), by and through their undersigned counsel, hereby file this Motion for Award of Attorney's Fees and Expenses.

## I.     INTRODUCTION

Plaintiffs are physicians who were participants in the America's Medical Home Team ("MHT") Program.  This class action asserts claims against MHT (which are now subject to a bankruptcy stay pursuant to this Court's Order R. Doc. 44) as well as the financing companies who offered financing for participation in the Program. These include Ascentium Capital, Inc. ("Ascentium" or "Settling Defendant"), Univest Capital, Inc., ("Univest" or "Settling Defendant") and Balboa Capital Corp. ("Balboa").  Scott Postle, the principal at MHT, and Cliff McKenzie (McKenzie or "Settling Defendant"), an individual employed at certain pertinent times by Ascentium.  Plaintiffs allege that MHT ran a scheme in which it promised physicians vast profits if they would supervise nurse practitioners rendering in-home health care services to patients. MHT sold licenses and equipment to the physicians through LLCs MHT created for them, and the Defendant financing companies provided the financing for such sales with personal guaranties from individual physicians.  MHT salespeople signed their victims to Installment Payment Agreements, ("IPAs") with the Defendant financing companies.  Plaintiffs maintain the whole process was fraught with misrepresentations, and the Program depended upon constantly signing up new physicians to sustain itself.

1

Before the Court is a preliminarily-approved settlement which will resolve claims of all class members against Ascentium, Univest, and McKenzie.[1]

## II.  MOTION FOR AN AWARD OF ATTORNEY FEES AND EXPENSES

The proposed Stipulation of Settlement includes an agreement on a request for an award of attorneys' fees, costs, and expenses to be paid to Class Counsel in a total amount ranging between $2,000,000.00 and $4,500,000.00. Of course, any fee award is subject to the Court's determination and broad discretion.  For the purposes of the Fairness Hearing, Class Counsel agreed to not request an award of attorneys' fees, costs, and expenses in excess of $4,500,000.00; and the Settling Defendants agreed to not object to a request by Class Counsel for an award of attorneys' fees, costs, and expenses in a total amount less than or equal to $2,000,000.00. The issue of attorneys' fees was not negotiated until an agreement in principal had been reached regarding the merits of the settlement among Class Members and Settling Defendants. The negotiations were arm's-length and meet all requisites of the F.R.C.P. and accompanying jurisprudence. Class Counsel makes a request for an award of $2,3000,000 in fees and expenses.

The determination of the amount awarded as attorney's fees is entrusted to the sound discretion of the trial court.[2] The Manual for Complex Litigation provides the following

---

[1] This Court has scheduled a fairness hearing for March 12, 2018.   This motion in support of final approval of the settlement is filed by the Plaintiffs at the soonest practical instance as (a) putative class members were given until February 26, 2018 to have post marked their exclusion notices, (b) the court appointed Settlement Administrator received exclusion notices as late as March 2, 2018, and (c) the Settlement Administrator's exclusion report to Class Counsel was not due until March 5, 2018.  See R. Doc. 64.

Lastly, it should be noted that Paragraph 57 (C) of the Stipulation of Settlement (R.Doc. 59-1) allows for Ascentium to terminate the settlement in the event that "Potential Class Members who would be liable in the aggregate for more than 10% of the total Cash Settlement Consideration due under the terms of this Stipulation timely opt out of the Settlement Class." As of the time of this filing, timely opt outs have been received by potential Class Members who would be liable in the aggregate approximately one third of the total Cash Settlement Consideration. There is potential for some of these opt outs to be withdrawn prior to the Fairness Hearing.  In any event, Ascentium has elected to not terminate this settlement pursuant to Paragraph 57 (C).

[2] *Wolf v. Frank*, 555 F.2d 1213, 1214 (5th Cir. 1977).

2

guidance for awarding attorney's fees: In determining awards of attorneys' fees, the guiding principles should be to provide compensation sufficient to stimulate the motive for representation of classes and to ensure that the fees awarded are consistent with the benefits bestowed upon the class, insofar as the bestowing of those benefits can be shown to be the product of the lawyers' work.[3]  The numerous exacting standards that have been set down by the court should be strictly applied to ensure that this aspect of the class action is not subject to abuse.[4]

Class counsel have expended thousands of hours in prosecuting this case and have done so at no cost to any member of the Plaintiff Class.  The result achieved is the release of contested claims of approximately $52,000,000.00 in exchange for payments of approximately $15,000,000.00, considerable injunctive relief, and up to $390,000.00 for the benefit of Balboa Class Members. Class counsel's request of fees is certainly reasonable in light of this consideration and the effort expended to obtain it.[5]

The Fifth Circuit has approved the lodestar approach for awarding attorney's fees in a class action that did not involve a "common fund."[6] The determination of a reasonable attorney's fee award involves a two-step process: (a) calculation of the lodestar and (b) determining whether the lodestar should be adjusted upward or downward.[7]

---

[3] *Manual for Complex Litigation, Fourth* ("*Manual 4th*") (2010).
[4] *Garza v. Sporting Goods Properties*, 1996 U.S. Dist. LEXIS 2009 (W.D. Tex. 1996).
[5] Class Counsel will offer Declarations and up to date time and expense reports to the Court at the Fairness Hearing in support of its fee and expense application.
[6] *Schipper v. TXU Corp.*, 2008 U.S. Dist. LEXIS 38062, *7-8 (N.D. Tex. 2008) (citing *Strong v. BellSouth Telcoms.*, 137 F.3d 844, 848-850 (5th Cir. 1998).  See also, *Purdie v. Ace Cash Express, Inc.*, 2003 U.S. Dist. LEXIS 22547, *26-27 (N.D. Tex. 2003); *Longden v. Sunderman,* 979 F.2d 1095, 1099 (5th Cir. 1992)( this circuit uses the "lodestar method" to calculate attorney's fees); and *Strong v. Bellsouth Telcoms.,* 137 F.3d 844, 850 (5th Cir. 1998) ("We note that several courts have advocated the use of the lodestar method in lieu of the percentage of fund method precisely in the situation where the value of the settlement is difficult to ascertain, reasoning that there is a strong presumption that the lodestar is a reasonable fee.")
[7] *Schipper v. TXU Corp.*, 2008 U.S. Dist. LEXIS 38062 (N.D. Tex. 2008) (citing *Rutherford v. Harris County,* 197 F.3d 173, 192 (5th Cir. 1999)).

The court determines the "lodestar" by multiplying the reasonable number of hours expended and the reasonable hourly rate for each participating attorney.[8] The second step, whether to increase or decrease the lodestar, requires the court to consider the twelve factors.[9]

### 1.      The *Johnson* Factors

The twelve *Johnson* factors are: (1) the time and labor required, (2) the novelty and difficulty of the issues, (3) the skill required to perform the legal services properly, (4) the preclusion of other employment, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the undesirability of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases.[10]

### A.      The time and labor required

The trial judge should weigh the hours claimed against her own knowledge, experience, and expertise of the time required to complete similar activities.[11]  Class Counsel will submit at the Fairness Hearing time summaries and detail totaling several thousand hours of attorney time.[12]  This case has involved fifteen months of litigation in the representation of 279 Class Members and the pursuit of claims against multiple defendants, in coordination with attorneys handling related litigation all over the country.  The factual investigation, assessment of the salient facts vis-à-vis applicable law, and the proper framing of legal theories and arguments to

---

[8] *Id*. (Citing *Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S. Ct. 1933, 76 L. Ed. 2d 40 (1983); *Migis v. Pearle Vision, Inc.*, 135 F.3d 1041, 1047 (5th Cir. 1998); *Louisiana Power & Light Co. v. Kellstrom*, 50 F.3d 319, 324 (5th Cir.), *cert. denied*, 516 U.S. 862, 116 S. Ct. 173, 133 L. Ed. 2d 113 (1995)).
[9] See *Cobb v. Miller*, 818 F.2d 1227, 1231-32 (5th Cir. 1987).
[10] *Johnson v. Georgia Highway Exp., Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974).
[11] *Johnson*, 488 F.2d at 717.
[12] Class Counsel will offer Declarations and up-to-date time and expense reports to the Court at the Fairness Hearing in support of its fee and expense application.

4

bind the lenders, as persons with knowledge, scienter, and participation in the MHT Scheme, was both time consuming and extremely involved.   Moreover, efforts to assess all known facts and create a settlement with appropriate subclasses that would meet the requisites of class certification and would be fair, reasonable, and adequate under the circumstances required thought, research, and skillful drafting.  It required working with consultants engaged by Class Counsel as well as significant work and effort by Class Counsel.  This was also condensed and concerted effort to obtain an early result.[13]

### B. The novelty and difficulty of the issues

Cases of first impression generally require more time and effort on the attorney's part.[14] This case is far from the typical class action.  It involves more than a mass tort claim for damages.  Rather, it is premised on proof of a fraudulent Ponzi-type scheme and the principal effort to rescind the IPA guarantees at issue.  Rather than provide a large common fund, the bulk of the relief achieve for the class is the invalidation of guarantees for indebtedness for which Class Members should not be held responsible or accountable.  In turn, the Class Members are agreeing to pay settlement payments for significantly less than Settling Lenders claim to have a reasonable argument that they would be able to collect against Class Members.  The Lenders rely on clauses in their respective agreements, known as "Hell or High Water" clauses, which in ordinarily would insulate lenders from acts and omissions perpetrated by third persons.[15]

Further, an expedited conclusion was in the overwhelming best interest of Class Members.  The level of anxiety and angst among Class Members regarding the uncertainty of what they may owe Ascentium and/ or Univest, if anything, and when they would be called to

---

[13] See "Massey Declaration" found in the Appendix in Support of the Motion for Final Approval and which will also be submitted at the Fairness Hearing in an Appendix in Support of the present motion.
[14] *Johnson*, 488 F.2d at 417.
[15] See Massey Declaration.

pay, was consistently present in this matter.  Ascentium and Univest were represented by competent and aggressive counsel who strongly preferred to engage against Class Members in individual suits in inconvenient venues against Class Members, in addition to engaging in negative and damaging credit reporting against putative class members in the interim of filing such suits.  The overmatch of resources of Ascentium and/ or Univest versus individual Class Members was to the disadvantage of Class Members.  Moreover, the legal costs that would likely be incurred while litigating individual matters would probably approach the actual settlement amounts proposed in this agreement. There was a risk that Class Members would even be cast for Settling Defendants' legal expenses and costs, which likely would be quite substantial.[16]

### C.      The skill required to perform the legal services properly

The trial judge should closely observe the attorney's work product.[17] The court may "recognize and reward achievements of a particularly resourceful attorney who secures a substantial benefit for his clients with a minimum of time invested."[18] The fact that the settlement does not result in all of the relief pled for should not necessarily detract from an assessment of its achievements.[19]

The present partial settlement achieved is a unique approach to a difficult problem.  It affords Plaintiffs with a measure of finality and preserves time, effort, and resources.  It mitigates the risk of more significant losses that Class Members could incur if they proceeded to trials on the merits, i.e. protracted and expensive litigation resulting in responsibility for four IPAs, plus Settling Defendants' attorneys' fees and costs, along with contractual penalties.

---

[16] See Massey Declaration.
[17] *Johnson*, 488 F.2d at 718.
[18] *Id.*
[19] See *Garza v. Sporting Goods Properties*, 1996 U.S. Dist. LEXIS 2009, 115-117 (W.D. Tex. Feb. 6, 1996) ("Notwithstanding that plaintiffs initially sought monetary damages to cover the full replacement cost of all barrels and additional exemplary damages… Thus, the failure to recover such additional monetary compensation does not detract from the extraordinary success achieved.").

Gaining a complete and thorough understanding of the facts, law and legal arguments of Settling Defendants was essential to properly craft proposed class action lawsuits in which multiple actual common issues of fact and law were presented by suitable class representatives with claims typical of unnamed class members.  Skill, effort, and tenacity by Class Counsel were essential for the presentation of a simple request for relief that applies class-wide, where using class procedure is not only permissible but indeed preferable and far superior than individualized resolution of claims, likely in multiple jurisdictions across the country.[20]

### D.    The preclusion of other employment

This guideline involves the consideration of subsequent alternative work which Class counsel is foreclosed from pursuing due to its representation of the Class Members.[21]  Class Counsel asserts that this litigation has been very involved, has taken priority in their respective practices, and has impacted their ability to seek other litigation.  That several thousand hours of class counsel's time had been devoted to this matter as opposed to other efforts underscores that counsel have been focused on this litigation to the exclusion of taking on other projects.

### E.    The customary fee

The *Johnson* court observed that the customary fee for similar work in the community should be considered.[22] The "customary fee" in a class action lawsuit is typically contingent, since it is often the case that no individual plaintiff has a large enough monetary stake in the litigation to justify charging on an hourly basis.[23] Class Counsel has undertaken this case on a contingency basis.

---

[20] See Massey Declaration.
[21] *Id.*
[22] *Id.* ("It is open knowledge that various types of legal work command differing scales of compensation.").
[23] *Purdie v. Ace Cash Express, Inc.*, 2003 U.S. Dist. LEXIS 22547, *32 (N.D. Tex. 2003).

### F. Whether the fee is fixed or contingent

"Courts have consistently recognized that the risk of receiving little or no recovery is a major factor in considering an award of attorney's fees."[24] This factor weighs heavily in favor of an award here because Class Counsel undertook this litigation and invested much time and effort with no assurance of payment or of recovery of a common fund given the insolvency of the principal defendant. This is complex case that posed significant risk of no recovery.

### G. Time limitations imposed by the client or the circumstances

The *Johnson* court observed as to this factor, that priority "work that delays the lawyer's other legal work is entitled to some premium."[25] Again, Class Counsel has made this case a priority and worked hard to achieve an expeditious resolution.[26] The time limitations in this matter have been driven by the anxiety and angst among class members to get resolution of what, if anything, they owe to Settling Defendants and certainty of what must be paid and when it is due. Settling Defendants had an interest to collect any monies that may be due to them on an expedited basis. All parties recognized the fact that engaging in extensive litigation would drive up costs and burden the ability to negotiate.[27]

### H. The recovery amount involved and the results obtained

The Court should consider the result obtained in terms of (a) a comparison of the extent of possible recovery with the amount of actual verdict or settlement; and (b) the benefit – monetary or non-monetary – conferred on the class, i.e. permitting the court to recognize and reward achievements of a particularly resourceful attorney who secures a substantial benefit for

---

[24] *Schwartz v. TXU Corp.*, 2005 U.S. Dist. LEXIS 27077, *102 (N.D. Tex. 2005) (noting "Lead Plaintiffs' counsel undertook this Litigation on a contingent fee basis, assuming a substantial risk that the Litigation would yield no recovery and leave them uncompensated.").
[25] *Johnson*, 488 F.2d at 718.
[26] See Massey Declaration and Declarations to be filed at the Fairness Hearing with up-to-date records.
[27] See Massey Declaration.

his or her clients with a minimum amount of time invested.[28] The key to this class action

settlement is the results obtained.[29]

For example, the court in *DeHoyos v. Allstate Corp*., considered a change in the credit

scoring formula, an educational outreach program, multi-cultural marketing, and an improved

appeals process as enhancing how beneficial the recovery was in that class action.[30] It is also

entirely appropriate to consider the cessation of accruing interest and collection efforts during the

pendency of litigation as a benefit to the class.[31]

This settlement affords class-wide injunctive relief by Ascentium's and Univest's

agreement to (i) refrain from any negative credit reporting; (ii) retract any extant negative credit;

and (iii) refrain from any further collection efforts or negative credit reporting. There is a release

from all claimed obligations under the Ascentium and Univest IPAs which those defendants value

at over $52,000,000.00 in exchange for payments by the Class Members totaling approximately

$15,000,000.00.  Also, it involves payment of up to $390,000.00 to the Balboa doctor subclass.

Additionally, Class Counsel has secured, subject to court approval, some $2,000,000 in attorney's

fees which will not have to be borne by individual class members.[32]  Bringing the matter to an

early conclusion, rather than expending significant time, resources, and energy provides a

---

[28] See *Graves v. Barnes*, 700 F.2d 220, 223 (5th Cir.1983).

[29] See *Garza v. Sporting Goods Properties, Inc.*, 1996 U.S. Dist. LEXIS 2009 (W.D. Tex. 1996) (noting key to class action settlement was results obtained).

[30] 240 F.R.D. 269, 331 (W.D. Tex. 2007)

[31] See *McAnaney v. Astoria Fin. Corp.*, 2011 U.S. Dist. LEXIS 114768, 10-11 (E.D.N.Y. 2011) (Furthermore, during the pendency of this lawsuit, defendants have ceased charging three of the five disputed fees, which, according to plaintiffs and class counsel, has resulted in an additional financial benefit to the Rule 23(b)(2) class members.)

[32] *Johnston v. Comerica Mortgage Corp.*, 83 F.3d 241, 246 (8th Cir. 1996) (citing *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Products Liab. Litig.*, 55 F.3d 768, 821(3rd Cir. 1995) ("The award to the class and the agreement on attorney fees [and costs] represent a package deal. Even if the fees are paid directly to the attorneys, those fees are still best viewed as an aspect of the class' recovery."); see also, *Vista Healthplan, Inc. v. Warner Holdings Co. III*, 246 F.R.D. 349, 364 (D.D.C. 2007) (explaining that "because the  attorneys' fees are borne by defendants and not plaintiffs, they represent a valuable part of the settlement").

significant benefit to the litigants, Court, attorneys, and legal system as a whole.  In this case, "sooner" is in fact better and highly favorable to the class.[33]

### I.        The experience, reputation, and ability of the attorneys

This Court has appointed the three undersigned firms as Class Counsel upon a submission of their credentials.[34] Couhig Partners, LLC, Carter, Scholer, PLLC, and The Crouch Firm, PLLC, have significant experience in litigating class actions and deceptive trade practices cases and, over the last year, have diligently litigated this action, dedicated substantial resources to the investigation and prosecution of these claims, and demonstrated their knowledge of the law at issue.  Senior lawyers assumed key roles in this case.  Each firm has deployed capital and professional resources of great value, and the lawyers from each firm dedicated significant time and energy to this fast track case.  The efforts of Class Counsel, and deployment of valuable resources by each Class Counsel firm, are the principal reasons that this case was brought to a rapid proposed settlement that is highly favorable to the class.[35]

### J.        The undesirability of the case

The Court in *Schwartz* noted that "Class Action cases that carry with them elevated risks, such as the present litigation and that also require lengthy investigation through informal discovery, not to mention a possibility of no recovery, certainly speaks to the undesirability of a case. … The issues presented in this litigation rendered the case inherently risky, if not 'undesirable' from the start."[36]

---

[33] See Massey Declaration.
[34] See R. Doc. 59-2.
[35] See Massey Declaration.
[36] 2005 U.S. Dist. Lexis 27077, at *107 (citing *Di Giacomo v. Plains All Am. Pipeline*, 2001 U.S. Dist. LEXIS 25532, at *35 (S.D. Tex. 2001).

This case contains many risks: it is a class action contingency case, with a bankrupt principle defendant, and more so in that the present partial settlement largely involves settlement payments from three subclass Members to Ascentium.  To its knowledge, Class Counsel is the only counsel in the MHT litigation working on a contingency basis.  Counsel knew from the outset that they might expend millions of dollars in attorney time in pursuing this litigation on behalf of the Class and receive no compensation if the litigation was ultimately unsuccessful.[37]

Handfuls of alleged guarantor class members around the country retained private counsel, who have filed individual lawsuits, or sought to defend lawsuits brought by some of the Settling Defendants.  No other lawyer or firm sought to address the complex issues presented or aggressive Settling Defendants in a class action anywhere.  There was a belief among others that using class action procedure would stall and impede the progress of the cases, rather than further resolution, and that certifying a class would be difficult.  Many were intimidated by class action procedure and found the handling of a class action a daunting and overwhelming commitment.   Many doubted that class action practice would result in expedited settlement negotiations, and no one outside of Class Counsel believed that a proposed settlement that would be highly favorable to the class would or could be negotiated and proposed to the Court in less than a year.  Of course, the overwhelming majority of interested persons preferred a fair settlement on a fast track basis.  Class Counsel have been the only lawyers willing to assuming the risks and commitment necessary to accomplish the proposed settlement.[38]

---

[37] See Massey Declaration.
[38] See *id*.

11

### K.   The nature and length of the professional relationship with the client

A lawyer in private practice may vary his fee for similar work in the light of the professional relationship of the client with his office.[39] This factor is not applicable.

### L.   Awards in similar cases

The reasonableness of a fee may also be considered in the light of awards made in similar litigation within and without the court's circuit.[40] The Court may use its own expertise and judgment to make an appropriate independent assessment of the hourly rates charged for the attorneys' services.[41]

Courts of this Circuit have approved lodestar rates in complex class action litigation as high as $825 per hour and blended rates as high as $450 per hour.[42] These rates are in line with awards from this district. [43] In *Slipchenko v. Brunel Energy, Inc.*, the Court noted that class counsel sought reimbursement of attorney's fees at the current hourly rates customarily billed to

---

[39] *Johnson,* 488 F.2d at 719.

[40] *Johnson,* 488 F.2d at 719.

[41] *SortiumUSA, LLC v. Hunger*, 2014 U.S. Dist. LEXIS 180323, *12 (N.D. Tex. 2014); *See also Davis v. Bd. of Sch. Comm'rs of Mobile Cnty.*, 526 F.2d 865, 868 (5th Cir. 1976); *Vanliner Ins. Co. v. DerMargosian*, 2014 WL 1632181, at *2 (N.D. Tex. Apr. 24, 2014) (noting that the Court is an expert on the reasonableness of attorney's fees).

[42] See *In Re Heartland Payment Systems, Inc.*, 851 F. Supp. 2d 1040 (S.D. Tex. 2012) (approving rates from $825 per hour for the co-lead class counsel to $90 per hour for a paralegal). See, e.g., *In re Vioxx Products Liability Lit.*, 760 F. Supp. 2d 640, 660-61 (E.D. La. 10/19/2013) (citing *In re Guidant*, 2008 WL 682174, at *15 (D.Minn. Mar. 7, 2008) (finding an average hourly rate of $443.29 was reasonable for work performed between 2005 and 2010 was reasonable)); *In Re Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico*, MDL No. 2179, Doc. 21849 (E.D. La. Oct. 25, 2016) (finding $450.00 per hour was an appropriate average/blended hourly rate); see also *In re Avandia Marketing, Sales Practices and Products Liability Litigation*, 2012 WL 6923367 (E.D. Pa. Oct. 19, 2012) (approving staggered rates of $225.00, $285.00, $475.00 and $595.00 (for an average hourly rate of $353.00) for attorneys based on their experience and contribution to the case).

[43] See *Purdie v. Ace Cash Express, Inc.*, 2003 U.S. Dist. LEXIS 22547, *30 (N.D. Tex. 2003) (approval of "Class Counsel spent 4,877.95 attorney hours in this case, at rates ranging between $200 and $550 per hour based on their level of experience and expertise in federal class action litigation."); For rates previously accepted in the Dallas area, see also *SCA Promotions, Inc. v. Yahoo! Inc.*, 2016 U.S. Dist. LEXIS 183761, *21-22 (N.D. Tex. 2016) (approving rates from $500 to $270; *SortiumUSA, LLC v. Hunger*, No. 3:11-CV-1656, 2015 WL 179025, at *3 (N.D. Tex. Jan. 14, 2015) (noting three years ago that "hourly rates of over $500 are charged in this community for a select group of top attorneys"); *Szijjarto v. McCarrell*, 2014 WL 555122, at *3-4 (S.D. Tex. Feb, 12, 2014) (observing four years ago that in "cases involving Texas lawyers, the hourly rates range from $220 for associates to $510 for senior partners).

fee-paying clients from $100 to $600 per hour which was "well within the prevailing market rate in the Houston legal community. "[44] In *Slipchenko*, the court also found that billing rates—ranging "from $240-$260 for paralegals, $415-$530 for associates, and $635-$775 for partners—are generally comparable to the rates charged by the Texas-based defense counsel in this action" and are rates courts have regularly approved "for representing plaintiffs in class action litigation, including litigation less complex than ERISA claims tend to be."[45]

### 2.    Class Counsel Fee Request

Class Counsel expects to present support at the Fairness Hearing for a total Lodestar based fee award of $2,300,000, (which will be inclusive of all Class Counsel fees and expenses, requested incentive awards, and the fees and expenses of two other firms providing common benefit services discussed below). While the Stipulation provides for a fee submittal in the range of $2,000,000 to $4,500,000, Class Counsel has agreed to seek an award of $2,300,000, subject to Court approval, and Ascentium has agreed to not object to such an amount or argue for a lesser amount.  At the Fairness Hearing Class Counsel will submit declarations and time sheets supporting rates within these ranges.  Class Counsel will submit evidence of several thousand hours of attorney time devoted to this class action and settlement.

In further support of its request, Class Counsel notes that multipliers commonly enhance a lodestar award as an "upward adjustment" after consideration of the *Johnson* factors.[46]  The rationale is to incentivize counsel to seek quick and effective ways to achieve early resolution.

---

[44] 2015 U.S. Dist. LEXIS 8177, *47-49 (S.D. Tex. 2015).

[45] *Id.* at *47-49 (*citing In re The Mills Corp. Sec. Litig.*, 265 F.R.D. 246, 260 (E.D. Va. 2009) (approving as reasonable rates ranging from $440 to $775 for partners and $295 to $525 for associates at Cohen Milstein); See also *Chesemore v. Alliance Holdings, Inc.*, 2014 WL 4415919, at *6 (W.D. Wis. Sept. 5, 2014) (finding 2014 "hourly rates ranging from $395 (for lower-level associates) to $895 (for highest-level partners)" to be reasonable)).

[46] *DeHoyos v. Allstate Corp.*, 240 F.R.D. 269, 336-337 (W.D. Tex. 2007) ("class counsel properly filed and has predicated their fee application using the lodestar method, coupled with a reasonable 1.68 enhancement.").  See also *Ingram v. Coca-Cola Co.*, 200 F.R.D. 685, 696 (N.D. Ga. 2001) (citing *Roberts v. Texaco, Inc.*, 979 F. Supp. 185, 197-98 (S.D.N.Y. 1997)) (approving negotiated fee award based upon a "mid-range" multiplier between 2.5 and 4

Class Counsel submits that its request for an award of $2,300,000 for its fees and expenses (as well as for the incentive awards and other common benefit work discussed below) is reasonable given the stakes, the results obtained, and the jurisprudential considerations cited.[47]

### 3.   Fee Request for Other Counsel for Common Benefit

Class Counsel has agreed to not oppose and to include in its submission the fee reimbursement from two law firms which provided common benefit services in this litigation and which have represented that the amounts sought have actually been billed to their respective clients, or are work in progress that will be billed to their clients.  Attorney Isaac Tawil has represented five physician Class Members in the McAllen, Texas area.  Each of Mr. Tawil's clients has agreed to the settlement.  Mr. Tawil met with Class Counsel early in the case and has remained in contact.  Mr. Tawil filed lawsuits in the 398th Judicial Court for the State of Texas, County of Hidalgo.  Class Counsel has communicated and collaborated with Mr. Tawil since an initial meeting, and particularly as to the proposed settlement.    Mr. Tawil's clients have been billed and paid $25,608.33 in fees for his services and have incurred $11,375.25 in expenses.[48]

---

and noting "courts have used applied multipliers that range from less than two times the reasonable time charges to more than five times the reasonable charge.")); *Berry v. Schulman*, 807 F.3d 600, 617-619 (4th Cir. Va. 2015) (approving a multiplier of 1.99); *Jones v. Singing River Health Sys.*, 2016 U.S. Dist. LEXIS 76278, *29 (S.D. Miss. 2016) ("After applying the *Johnson* factors to the lodestar, the Court finds that a multiplier of 1.5 should be applied to the lodestar, resulting in an award of $4,805,772.30. This upward adjustment is warranted, because this [consolidated class actions over alleged underfunding of retirement plan] was complex, high profile litigation").

[47] By comparing this result to one under a percentage method, Class Counsel suggests its fee request is more than reasonable.  The "majority of common fund fee awards fall between 20% to 30% of the fund" and may be adjusted upon consideration of the twelve *Johnson* factors. *Waters v. Cook's Pest Control, Inc.*, 2012 U.S. Dist. LEXIS 99129, 41-42 (N.D. Ala. July 17, 2012) (citations omitted) . See also, *Purdie v. Ace Cash Express, Inc.*, 2003 U.S. Dist. LEXIS 22547, *33 (awarding 2.1 million requested under lodestar and noting class settlement is $ 11 million, and the requested fee award is approximately 20% of the settlement fund).  Subclasses 1-3 here are charged with $15,000,000 in settlement payments.  However, the value of the IPA guarantees being settled according to Settling Defendants is $52,000,000, injunctive relief is obtained and there are up to $390,0000 in payments to Subclass Four. See *Purdie*, 2003 U.S. Dist. LEXIS 22547, *32-33.("In class action lawsuits, courts often apply a percentage of the common fund analysis and award attorney's fees in the range from twenty-five percent (25%) to thirty-three and thirty-four one-hundredths percent (33.34%)."). See also, *Fleisher v. Phoenix Life Ins. Co.*, 2015 U.S. Dist. LEXIS 121574, 3-4 (S.D.N.Y. Sept. 9, 2015)(finding non-monetary benefits—agreement to give up defenses to challenges to policies and to not impose COI benefits-- could be valued at $94.3 million).   Given the relief obtained it would not be hard for this Court to value that relief so as to justify a $2,300,000 award.

[48] See Massey Declaration.

Mr. Tawil's fee and costs submission is in line with the value of the benefit his efforts and collaboration brought to the class overall.[49]

Attorney Kirk Morgan, with the firm of Smith Haughey Rice & Roegge represents nine physicians Class Members each located State of Michigan.  Each of Mr. Morgan's clients has agreed to the settlement.   Mr. Morgan extensively researched the matters central to the MHT scheme.  In addition, Mr. Morgan, in connection several of his clients, had begun investigating the facts central to the MHT program.  Mr. Morgan has been forthcoming and collaborative with Class Counsel regarding facts and details of his investigatory efforts.  In addition, Mr. Morgan located and retained a bankruptcy lawyer in the Dallas area to represent his clients and others in the MHT Bankruptcy proceeding.  Mr. Morgan made significant contributions in communicating negotiations with class members, coordinating the national efforts of lawyers representing physicians in MHT litigation, and in raising and developing defenses against the IPA guarantees.  Mr. Morgan's clients have been billed and paid $119,269.50 in fees for his firm's services and have incurred $5,075.38 in expenses.  Mr. Morgan's fee and cost submission is in line with the value of the benefit his efforts and collaboration brought to the class overall.  Redacted records of these fees and expenses are attached hereto and the Class Counsel requested that these amounts be included in the award of attorneys fees and reimbursement of expenses by this Court.[50]

### 4.    Expenses and Incentive Awards

The expenses Class Counsel incurred for the benefit of the class will be included in the billing records to be presented at the Fairness Hearing.   Class Counsel submits these are modest and reasonable expenses incurred for the benefit of the class and necessary to successfully achieve the proposed settlement.

---

[49] See Massey Declaration.
[50] See Massey Declaration.

Class Counsel further seek to include an incentive award on behalf of the four representative claimants in a reasonable amount each to be taxed as an expense. Incentive awards have been approved in other circuits and by district courts in this circuit to reward class representatives for their work on behalf of the class.[51] Courts often award enhancements to certain plaintiffs in a class action to incentivize plaintiffs to be of service to their fellow class members; to compensate them for work done for the class; and to make up for opportunity costs as a result of expending efforts on behalf of the class.[52] Courts within the Fifth Circuit have awarded these types of bonuses or incentives in an effort to compensate plaintiffs who take on additional burdens such as responding to discovery, providing testimony, and additional time commitments due to their service to the class.[53] In *In Re Educ. Testing Serv. Praxis Principles of Learning & Teaching, Grades 7-12 Litig.*, the court approved $2,000 incentive payments upon finding that the class representatives were involved in initiating the litigation, and were willing to be subjected to discovery and to submit to depositions on behalf of the class."[54] The named representatives in this case have been and remain willing to participate in discovery and were instrumental in initiating and advancing the present case.[55]

As such, Class Counsel requests incentive awards of reasonable amounts for each of the four representatives would be appropriate here.[56]

---

[51] *Marcus v. J.C. Penney Co.*, 2017 U.S. Dist. LEXIS 214427, *19 (E.D. Tex. 2017).

[52] See *Rodriguez v. West Publishing Corp.*, 563 F.3d 948, 959 (9th Cir. 2009).

[53] *Humphrey v. United Way of Texas Gulf Coast*, 802 F. Supp. 2d 847, 868-69 (S.D. Tex. 2011); *Braud v. Transport Service Co. of Ill.*, 2010 WL 3283398, *14 (E.D. La. 2010); *McClain v. Lufkin Industries Inc.*, 2010 WL 455351, *25 (E.D. Tex. 2010).

[54] 447 F. Supp. 2d 612, 633 (E.D. La. 2006).

[55] *See* Massey Declaration.

[56] *See Jones v. JGC Dallas LLC*, 2014 U.S. Dist. LEXIS 177472, *15 (N.D. Tex, 2014) (approving four incentive awards of $3,250); *Slipchenko v. Brunel Energy, Inc.*, 2015 U.S. Dist. LEXIS 8177, *37, 2015 WL 338358 (S.D. Tex. 2015)(approving awards of $6,000, $4,000 and $2,000 and citing *Shaw v. Toshiba Am. Info. Sys., Inc*., 91 F. Supp. 2d 942, 973 (E.D. Tex. 2000) (approving $25,000 incentive wards to both named plaintiffs); *In re Catfish Antitrust Litig*., 939 F. Supp. 493, 504 (N.D. Miss. 1996) (approving $10,000 incentive awards to each of the four named plaintiffs); see also *In re Sprint Corp. ERISA Litig*., 443 F. Supp. 2d 1249, 1271 (D. Kan. 2006) ($5,000 incentive award to named plaintiffs);  *In re McKesson HBOC Inc. ERISA Litig*., 391 F. Supp. 2d 844, 851 (N.D. Cal.

**III.    CONCLUSION**

For the foregoing reasons, Representative Plaintiffs respectfully ask that the Court grant

this Motion for an Award of Attorney's Fees and Costs.

(Signature Page to Follow)

---

2005) ($5,000 incentive award to named plaintiffs)). *Quintanilla v. A & R Demolition, Inc.,* 2008 U.S. Dist. LEXIS 37449, *9-10 (S.D. Tex. 2008)(approving $ 1,000 incentive awards and *citing DeHoyos v. Allstate Corp.,*240 F.R.D. 269 (W.D. Tex. 2007)  (approving award of $5,000); *Camp v. Progressive Corp.,* 2004 WL 2149079 (E.D. La. Sept. 23, 2004) (approving award of $10,000 to named plaintiff and awards of $1,000 to $2,500 to other FLSA collective action members); *Purdie v. Ace Cash Express, Inc.,* 2003 U.S. Dist. LEXIS 22547 (N.D. Tex. 2003) (approving award of $16,665 in incentive payments to the named plaintiffs).

Date:    March 5, 2018

Respectfully submitted,

*/s/* Jonathan P. Lemann
E. Leon Carter
Texas Bar No. 03914300
lcarter@carterscholer.com
 Joshua J. Bennett
Texas Bar No. 24059444
jbennett@carterscholer.com
CARTER SCHOLER, PLLC
8150 N. Central Expy., Suite 500
Dallas, Texas 75206
Telephone: (214) 550-8188
 Facsimile: (214) 550-8185

Paul Crouch
The Crouch Firm, PLLC
Bar #05144700
5609 Masters Ct.
Flower Mound, TX 75022
Telephone: (817) 714-9820
Facsimile: (855) 886-6374

*Couhig Partners, LLC*
Robert E. Couhig, Jr.,
Texas Bar No. 04877400
Louisiana Bar Roll No 4439
Donald C. Massey,
Louisiana Bar Roll No. 14177
Jonathan P. Lemann,
Texas Bar No. 24054333
Louisiana Bar Roll No. 26380
Jeffrey T. Pastorek,
Louisiana Bar Roll No. 33309
1100 Poydras Street, Suite 1150
New Orleans, LA 70163
Telephone: (504) 588-128
Telecopier: (504) 588-9750

**ATTORNEYS FOR PLAINTIFFS**

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on March 5, 2018, a true and correct copy of the foregoing motion was served on all counsel of record through the Court's electronic filing system.

/s/ Jonathan P. Lemann
Jonathan P. Lemann