IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| DR. DEREK MELBY, DR. DANILO POLICARPIO, DR. DAVID GUILLOT, DR. JAIDEEP PATEL, et al., | § § § § | |
| Plaintiffs, | § § | |
| v. | § § | Civil Action No. 3:17-cv-155-M (Consolidated with Nos. 3:17-cv-732-M; |
| AMERICA'S MHT, INC., ASCENTIUM CAPITAL LLC, CLIFF MCKENZIE, SCOTT POSTLE, BALBOA CAPITAL CORPORATION, and UNIVEST CAPITAL, INC., | § § § § § § § | 3:17-cv-868-M; and 3:17-cv-963-M) |
| Defendants. | § § | |

**ORDER**

Before the Court is Class Counsel's Motion for Award of Attorney's Fees and Expenses (ECF No. 92) and G. Eric De Leon's Motion for Award of Attorney's Fees (ECF No. 110).  For the reasons stated below, Class Counsel's Motion is **GRANTED**, and Mr. De Leon's Motion is **DENIED**.

I.      **Factual and Procedural Background**

Starting in 2011, America's MHT, Inc. represented to physicians that it operated a network of patient-recruitment coordinators, nurse practitioners, and other administrative staff in cities throughout the United States.  (Am. Compl. ¶¶ 15-16, ECF No. 57).  MHT offered to sell physicians its Medical Home Team Service Program ("Program"), through which physicians would supervise nurse practitioners who provided home health care in the physician's region. (*Id.* ¶ 15).  In turn, MHT represented that participating physicians would receive "hundreds of thousands of dollars per year" in profit.  (*Id.* ¶ 17).

As part of a physician's participation in the Program, MHT required that a limited liability company be created to handle the Program's financing, which purportedly would be used to pay licenses, software, and other operational costs. (Am. Compl. ¶¶ 21-24). Pursuant to the terms of the Program, the physician—and in some cases, the physician's business association, business partner, or family member—entered into Installment Payment Agreements ("IPAs") and received financing from one or more of three lenders: Ascentium Capital LLC, Balboa Capital Corporation, or Univest Capital, Inc. (*Id.* ¶ 31). Under the IPAs, payments were made directly by the lenders to MHT on behalf of the LLCs created through the Program. (*Id.* ¶¶ 31, 38). These payments were allegedly "siphoned off" to enrich MHT and its employees. (*See, e.g., id.* ¶¶ 52-53).

The physicians subsequently filed suits against MHT, Ascentium, Balboa, Univest, Ascentium employee Cliff McKenzie, and MHT representative Scott Postle. These suits were consolidated into this class action. (*See* ECF Nos. 1, 40, 57, 69). On September 26, 2017, Plaintiffs notified the Court of a settlement resolving the claims of all class members against Ascentium, Univest, and McKenzie (collectively, "Settling Defendants"). (ECF No. 59). Under the terms of the settlement, a class member who was a guarantor of a Univest IPA, Ascentium IPA, or both had their outstanding loan obligations reduced. (*Id.* at 6-8). A class member who was a guarantor of only a Balboa IPA received a fixed payment, which, at the class member's election, could be used to pay outstanding loan obligations to Balboa. On June 22, 2018, the Court granted final approval of the settlement. (ECF No. 125).

Class Counsel—Couhig Partners, LLC, Carter Arnett PLLC, and The Crouch Firm, PLLC—move for attorney's fees and expenses. (ECF No. 92). Class Counsel also move for (1) fees and expenses on behalf of Isaac Tawil and Kirk Morgan, two attorneys who "provided common benefit services in this litigation," and (2) incentive awards for the representative

2

Plaintiffs.  (*Id.* at 14-16).  G. Eric De Leon, counsel for two of the class members, separately

moves for fees.  (ECF No. 110).  As part of the settlement, Ascentium has agreed to pay

attorney's fees and expenses not to exceed $2.3 million.  (ECF No. 123).

## II.     Legal Standard

In class actions that do not involve common funds, the Fifth Circuit uses the lodestar

method to assess attorney's fees.  *Strong v. BellSouth Telecommunications, Inc.*, 137 F.3d 844,

850 (5th Cir. 1998); *see also Schipper v. TXU Corp.*, 2008 WL 2002044, at *2 (N.D. Tex. May

9, 2008).  The lodestar is calculated by multiplying the number of hours that an attorney

reasonably spent on the case by a reasonable hourly rate.  *Smith & Fuller, P.A. v. Cooper Tire &*

*Rubber Co.*, 685 F.3d 486, 490 (5th Cir. 2012).  The movant bears the burden of establishing the

number of hours expended by presenting adequate time records as evidence.  *See Watkins v.*

*Fordice*, 7 F.3d 453, 457 (5th Cir. 1993).  A court then uses this time as a benchmark and then

excludes any time that is excessive, duplicative, unnecessary, or inadequately documented.  *Id.*

The hours remaining are those reasonably expended.  A reasonable hourly rate is the prevailing

market rate in the relevant legal community for similar services by lawyers of reasonably

comparable skills, experience, and reputation.  *See Blum v. Stenson*, 465 U.S. 886, 895–96 n.11

(1984).  The relevant legal community is the community in which the district court sits.  *See*

*Tollett v. City of Kemah*, 285 F.3d 357, 368 (5th Cir. 2002).  The burden is on the movant to

"produce satisfactory evidence—in addition to the attorney's own affidavits—that the requested

rates" are reasonable.  *Blum*, 465 U.S. at 896 n.11.  There is a strong presumption of the

reasonableness of the lodestar.  *See Saizan v. Delta Concrete Prods. Co.*, 448 F.3d 795, 800 (5th

Cir. 2006).

After calculating the lodestar, the court may either accept it or modify it after considering

the *Johnson* factors.  *See Forbush v. J.C. Penney Co.*, 98 F.3d 817, 821 (5th Cir. 1996).  The

*Johnson* factors are (1) the time and labor required; (2) the novelty and difficulty of the legal

issues; (3) the skill required to perform the legal service properly; (4) the preclusion of other

employment by the attorney as a result of taking the case; (5) the customary fee; (6) whether the

fee is fixed or contingent; (7) time limitations imposed by the client or other circumstances; (8)

the monetary amount involved and the results obtained; (9) the experience, reputation, and

ability of the attorneys; (10) whether the case is undesirable; (11) the nature and duration of the

professional relationship with the client; and (12) awards in similar cases.  *Johnson v. Ga.*

*Highway Exp., Inc.*, 488 F.2d 714, 718 (5th Cir. 1974), *overruled on other grounds by Blanchard*

*v. Bergeron*, 489 U.S. 87, 90 (1989).

      Analysis of the *Johnson* factors must not be merely conclusory; it must establish grounds

for the court's decision to modify the lodestar.  *Klein v. O'Neal, Inc.*, 705 F. Supp. 2d 632, 676

(N.D. Tex. 2010).  However, "not every factor need be necessarily considered."  *In re*

*Combustion, Inc.*, 968 F. Supp. 1116, 1135 (W.D. La. 1997); *see also In re High Sulfur*, 517 F.3d

220, 228-29 (5th Cir. 2008) ("If the district court has articulated and clearly applied the correct

criteria, we will not require the trial court's findings to be so excruciatingly explicit in this area

of minutiae.").

## III.    Analysis of Class Counsel's Fees and Expenses

###     a.  Fees

      The total lodestar amount asserted by Class Counsel is $2,027,158.50, representing

3,177.9 hours of work.[1]  Class Counsel has submitted detailed time records in support.  The

Court has examined the records and finds them reasonable.  The hours expended on the case

---

[1] Couhig Partners has spent 2,965.1 hours prosecuting this action, and it seeks a total lodestar amount of $1,886,258.50.  (Couhig Decl. ¶ 4, ECF No. 100; Couhig Supp. Decl. ¶ 4, ECF No. 120).  Carter Arnett has spent 153.4 hours prosecuting this action, and it seeks a total lodestar amount of $99,320.  (Carter Decl. ¶ 6, ECF No. 100).  The Crouch Firm has spent 59.4 hours prosecuting this action, and it seeks a total lodestar amount of $41,580. (Crouch Decl. ¶ 4, ECF No. 120).

were not excessive, duplicative, unnecessary, or inadequately documented.  The hourly rates of

the various professionals involved in the case are reasonable.  *See also Slipchenko v. Brunel*

*Energy, Inc.*, 2015 WL 338358, at \*19 (S.D. Tex. Jan. 23, 2015) (noting that billing rates—

ranging "from $240-$260 for paralegals, $415-$530 for associates, and $635-$775 for partners—

are generally comparable to the rates charged by the Texas-based defense counsel in this action"

and are rates courts have regularly approved "for representing plaintiffs in class action

litigation"). Furthermore, the rates have not been contested.  *See Tollett*, 285 F.3d at 369

(accepting counsel's declaration on the hourly rate given that the rate was "not contested").

Class Counsel seeks to enhance the lodestar by a 1.04 multiplier, for a total award of $

$2,101,330.43.[2]  Analysis of the *Johnson* factors supports the minor enhancement.

### i.  Time and Labor Required

This case has required a substantial amount of time and labor.  Class Counsel has

expended over 3,000 hours over the course of fifteen months in prosecuting this case.  (ECF No.

92 at 4).  There was a significant amount of informal discovery involved: Class Counsel

conducted several hundred hours of witness interviews, consulted with experts, and reviewed

thousands of pages of documents obtained from public sources, Defendants, and third parties.

(Massey Decl. ¶¶ 3, 32, 34–37, 43-46, 64, 73-74).  Class Counsel also had to coordinate the

efforts of other attorneys, from across the country, who represented physicians in related

litigations.  (*Id.* ¶ 34).

---

[2] Class Counsel seeks a total amount of $2,300,000, "which will be inclusive of all Class Counsel fees and expenses, requested incentive awards [for representative Plaintiffs], and the fees and expenses of [Kirk Morgan and Isaac Tawil]."  (ECF No. 92 at 13).  Ascentium does not oppose this total amount.  (ECF No. 123).  As detailed further below, Class Counsel are reimbursed $29,341.11 for expenses; representative Plaintiffs are awarded $2,000 each, for a total of $8,000; Isaac Tawil is awarded $25,608.33 in attorney's fees and reimbursed $11,375.25 for expenses; Kirk Morgan is awarded $119,269.50 in attorney's fees and reimbursed $5,075.38 for expenses.  The total amount, excluding Class Counsel's fees, is $198,669.57.  Class Counsel thus seeks $2,101,330.43 in fees.

### ii.   Novelty and Difficulty of the Issues

Plaintiffs' claims involved complex legal and factual issues, which weigh in favor of awarding enhanced fees to Class Counsel.  For example, Plaintiffs needed to establish a RICO enterprise and the Settling Defendants' participation in that enterprise; Plaintiffs needed to establish the accuracy and materiality of numerous representations; and Plaintiffs needed to establish predicate acts of racketeering.  (*See* ECF No. 95 at 8-12).

### iii.   Skill Required to Perform the Legal Services Properly and the Experience, Reputation, and Ability of the Attorneys

Class Counsel has significant expertise in class actions.  (*See* ECF No. 59-2 (curriculum vitae of Class Counsel)).  The favorable recovery obtained for the class is a testament to Class Counsel's skills, especially in light of defense counsel's quality work.  *See Schwartz v. TXU Corp.*, 2005 WL 3148350, at *30 (N.D. Tex. Nov. 8, 2005) ("The ability of Plaintiff's Counsel to obtain such a favorable settlement for the Class in the face of such formidable legal opposition confirms the superior quality of their representation.").

### iv.   Preclusion of Other Employment

That "several thousand hours of [C]lass [C]ounsel's time had been devoted to this matter as opposed to other efforts underscores that [Class Counsel] had been focused on this litigation to the exclusion of taking on other projects."  (ECF No. 92 at 7).  The Court agrees that such a level of work would inevitably preclude other representations.

### v.   Customary Fee

Because cases like these do not have "customary fees," the factor is not applicable.

### vi.   Whether the Fee Is Fixed or Contingent

Class Counsel prosecuted this case on a fully contingent basis.  This is significant given Plaintiffs' uncertain prospects of success and the unlikelihood of recovering from MHT due to its bankruptcy.

**vii.   Time Limitations Imposed by the Client or Other Circumstances**

Because there is no indication that any class member imposed time limits in the

prosecution of this case, the factor is not applicable.  However, the Court notes that interest and

fees were accruing on class members' loan obligations.  Delays would have been detrimental to

the class, and Class Counsel worked hard to achieve a speedy and substantial benefit for the class

members.

**viii.   Monetary Amount Involved and the Results Obtained**

The Fifth Circuit has called this factor the "most critical" factor.  *See Migis v. Pearle*

*Vision, Inc*., 135 F.3d 1041, 1047 (5th Cir. 1998).  The settlement here resulted in a favorable

outcome for the class.  Of the $52 million that class members collectively owed under the IPAs,

Ascentium and Univest agreed to release class members from $37 million.  (*See* Massey Decl. ¶

4).  This represents a loan forgiveness of over 70%.  While many of the class members

individually agreed to pay over $450,000 through the Program, none will pay close to that

amount under the settlement.  Even members indebted to Balboa will receive payments based on

a formula, which will amount to an award of tens of thousands of dollars.  (ECF No. 59-1 §

22.C).  Given that there was a significant risk that, absent the settlement, class members would

have to pay the full balance due under the IPAs as well as late fees and interest thereunder, the

settlement is a substantial benefit for the class members.

Other courts have approved similar settlements, where class members agree to release

claims in exchange for debt forgiveness.  The settlement here provides equivalent, if not more

substantial, relief to class members.  *See Holman v. Student Loan Xpress, Inc.*, No. 8:08-cv-305-

SDM-MAP (M.D. Fla. Jan. 4, 2011) (approving settlement that reduced the class members' debts

by amounts ranging between 20% and 75% of each class member's outstanding loan

obligations); *F.C.V., Inc. v. Sterling National Bank*, 2006 WL 1319822 (D.N.J. May 12, 2006) (approving debt forgiveness in the amount of 33% of the balance due).

### ix.   Undesirability of the Case

As discussed, this litigation involved lengthy investigation through informal discovery, a host of difficult factual and legal issues, and a real risk of no recovery.  This all speaks to the undesirability of the case.  *See Braud v. Transport Serv. Co.*, 2010 WL 3283398, at \*13 (E.D. La. Aug. 17, 2010) (noting that the "risk of non-recovery" and "undertaking expensive litigation against . . . well-financed corporate defendants on a contingent fee" makes a case undesirable, warranting a higher fee).

### x.   Nature and Length of Professional Relationship with the Client

Because the record does not include evidence regarding those aspects of Class Counsel's professional relationship with the representative Plaintiffs, the factor is not applicable.

### xi.   Awards in Similar Cases

The 1.04 multiplier requested by Class Counsel is in the lower end of fee awards in cases with similar characteristics, i.e., where class members agree to release claims in exchange for debt forgiveness.  *See Cosgrove v. Citizens Auto. Fin., Inc.*, 2011 WL 3740809, at \*10 (E.D. Pa. Aug. 25, 2011) (2.14 multiplier); *In re Lloyd's Am. Tr. Fund Litig.*, 2002 WL 31663577 (S.D.N.Y. Nov. 26, 2002) (2.09 multiplier); *Smith v. CRST Van Expedited, Inc.*, 2013 WL 163293, at \*5 (S.D. Cal. Jan. 14, 2013) (1.5 multiplier); *Whitaker v. Navy Fed. Credit Union*, 2010 WL 3928616, at \*4 (D. Md. Oct. 4, 2010) (no multiplier).  This gives the Court "a degree of confidence in approving the award."  *Klein*, 705 F. Supp. 2d at 675.

### xii.   Conclusion

After considering the *Johnson* factors, the Court concludes that the fee award is reasonable and fair.  Class Counsel is not requesting an award substantially greater than its

lodestar; a 1.04 multiplier is more than appropriate given the results achieved by Class Counsel.

The fact that there have been no objections further supports the award.

### b.  Expenses

Class Counsel also seeks reimbursement of its expenses, in the amount of $29,341.11.[3]

Class Counsel has provided records detailing the expenses for which it seeks reimbursement.

(App. at 152-53, 177-78, ECF No. 100; Supp. App. at 187-88, ECF No. 120).  Expenses and

administrative costs that were "reasonably and necessarily incurred in prosecuting this action and

achieving" the settlement may be reimbursed.  *See Schwartz*, 2005 WL 3148350, at *34

(reimbursing consulting expert fees, transportation, meals and lodging, in-house and outsourced

photocopying, research, court reporting fees and deposition transcripts, overnight courier

services, and postage); *see also Billitteri v. Sec. Am., Inc.*, 2011 WL 3585983, at *10 (N.D. Tex.

Aug. 4, 2011).  The expenses here were reasonable and necessary for successful prosecution of

this case, and there have been no objections.  Accordingly, the expenses are reimbursed.

## IV.  G. Eric De Leon's Fees

G. Eric De Leon, counsel for class members Jay Hoelscher and Dina Goytia-Leos, seeks

$21,500.50 in attorney's fees.  (ECF No. 110).  According to his motion, Mr. De Leon shared

with Class Counsel his knowledge regarding the "factual and legal ramifications of all aspects"

of the case.  (*Id.* at 3).  He also "engaged a consultant whose findings" were provided to Class

Counsel.  (*Id.* at 2).

The representative Plaintiffs oppose Mr. De Leon's Motion.  (ECF No. 122 at 3).  Class

Counsel reached out to Mr. De Leon regarding settlement offers, but Mr. De Leon's "feedback

was essentially that [his] clients were not interested, but instead wished to pay less."  (*Id.*)  Class

Counsel's other interactions with Mr. De Leon were "status updates . . . providing information

---

[3] Specifically, Carter seeks reimbursement of $2,210.37, (Carter Aff. ¶ 6), and Couhig seeks reimbursement of $27,130.74, (Couhig Decl. ¶ 6; Couhig Supp. Decl. ¶ 5).

about the settlement and answering questions or providing information that Mr. De Leon

sought." (*Id.*)  The consultant that Mr. De Leon says he engaged was apparently an attorney that

one of his clients independently retained to address the tax consequences of the settlement. (*Id.*

at 2).  Although Mr. De Leon was "cooperating in returning Class Counsel's phone call to

provide . . . information," Class Counsel argues that this activity did not provide any material

benefit to the class. (*Id.* at 3).  Mr. De Leon has failed to respond to representative Plaintiffs'

opposition.

The record indicates that Mr. De Leon neither performed services that "substantial[ly]

benefit[ted]" the class nor identified any benefits he "independently provided to the class that

would not have been provided by the services" of Class Counsel.  *See In re Enron Corp. Sec.,*

*Derivative & ERISA Litig.*, 2008 WL 2566929, at *3 (S.D. Tex. June 24, 2008).  Mr. De Leon

fails to articulate any concrete contributions, only making vague statements about the

"significant time and effort" he expended on the case and the "knowledge" he shared with Class

Counsel.  The Court also gives "considerable weight" to representative Plaintiffs' determination

that Mr. De Leon should not be awarded fees.  *In re Enron Corp. Sec., Derivative & ERISA*

*Litig.*, 586 F. Supp. 2d 732, 765 (S.D. Tex. 2008); *Erica P. John Fund, Inc. v. Halliburton Co.*,

2018 WL 1942227, at *15 (N.D. Tex. Apr. 25, 2018).  Accordingly, the Court declines to award

attorney's fees to Mr. De Leon.[4]

## V.      Kirk Morgan's Fees and Expenses

Class Counsel seeks attorney's fees and expenses on behalf of Kirk Morgan of the law

firm Smith Haughey Rice & Roegge.  (ECF No. 92 at 15).  Mr. Morgan seeks $119,269.50 in

attorney's fees, which is the amount of his lodestar. (*Id.*; *see also* App. at 45-63).

---

[4] Additionally, Mr. De Leon states that he spent 90 hours representing Drs. Hoelscher and Goytia-Leos, but fails to provide any evidence in support.  To establish a lodestar, Mr. De Leon bears the burden of establishing the numbers of hours expended and must present adequate time records. *See Watkins*, 7 F.3d at 457.

Mr. Morgan represents nine class members from Michigan.  Mr. Morgan was actively involved in the litigation and provided a substantial and independent benefit to the class.  He has "extensively researched the matters central to the MHT scheme, primarily under Michigan law" and has been "forthcoming and collaborative [with Class Counsel] regarding the facts and details" of his investigation.  (Massey Decl. ¶ 134).  Mr. Morgan's efforts were particularly instrumental in "raising and developing defenses against the IPA guarantees."  (ECF No. 92 at 15).  Indeed, Class Counsel's time records detail consistent and frequent communications with Mr. Morgan during the pendency of this case.  (*See, e.g.*, App. at 111, 124, 125-26, 130-31, 146-48, 150-51).  Furthermore, Mr. Morgan located and retained a bankruptcy lawyer in the Dallas area to represent his clients and other class members in MHT's bankruptcy proceedings.  (Massey Decl. ¶ 134).  He freely shared information regarding the bankruptcy proceedings, including transcripts, with Class Counsel.  (*Id.*)  Moreover, the Court has examined the contemporaneous time records and finds them reasonable.  Accordingly, and for the reasons similar to the ones discussed in awarding fees to Class Counsel, the Court awards attorney's fees to Kirk Morgan.

Mr. Morgan also seeks reimbursement of $5,075.38 in expenses and provides an expense report.  (App. at 64-65).  There are no objections to his reimbursement.  After reviewing the evidence provided, the Court finds that the expenses were reasonable and necessary for successful prosecution of this case.  Accordingly, the expenses are reimbursed.

## VI.    Isaac Tawil's Fees and Expenses

Class Counsel also seeks attorney's fees and expenses on behalf of Isaac Tawil.  (ECF No. 92 at 14).  Mr. Tawil seeks $25,608.33 in attorney's fees, which is the amount of his lodestar.  (*Id.*; *see also* Tawil Decl. ¶ 6, ECF No. 127)

Mr. Tawil represents five class members from the McAllen, Texas area.  (Massey Decl. ¶ 130).  Like Mr. Morgan, Mr. Tawil was actively involved in the litigation and provided a substantial and independent benefit to the class.  Class Counsel and Mr. Tawil have "communicated and collaborated . . . since [their] initial meeting" on the strategy of the case, particularly as to settlement.  (*Id.*; *see also* Tawil Decl. ¶ 4 ("I have engaged in various discussions of and made recommendations for the resolution of settlement issues.")).  Class Counsel's time records detail consistent and frequent communications with Mr. Tawil during the pendency of this case.  (*See, e.g.*, App. at 124, 146, 149, 151).  The Court has examined the contemporaneous time records and find them reasonable.  Accordingly, and for the reasons similar to the ones discussed in awarding fees to Class Counsel, the Court awards attorney's fees to Isaac Tawil.

Mr. Tawil also seeks $11,375.25 in expenses and provides an expense report.  (Ex. A, ECF No. 127).  There are no objections to his reimbursement.  After reviewing the evidence provided, the Court finds that the expenses were reasonable and necessary for successful prosecution of this case.  Accordingly, the expenses are reimbursed.[5]

## VII.    Incentive Awards for Representative Plaintiffs

Class Counsel requests that the representative Plaintiffs—Drs. Derek Melby, Danilo Policarpio, David Guillot, and Jaideep Patel—receive "incentive awards of reasonable amounts" for their work on behalf of the class.  (ECF No. 92 at 16).  Incentive awards are discretionary and are intended to "compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general."  *Humphrey v. United Way of Texas Gulf Coast*, 802 F. Supp. 2d 847, 868 (S.D. Tex. 2011) (quoting *Rodriguez v. W. Publ'g*

---

[5] Mr. Tawil's clients have already paid his fees and expenses.  (Tawil Decl. ¶ 6).  Accordingly, Mr. Tawil is directed to reimburse his clients upon payment by Ascentium.

*Corp.*, 563 F.3d 948, 958-59 (9th Cir. 2009)).  In determining whether to make such an award, the court may consider such factors as "the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefited from those additions, and the amount of time and effort the plaintiff expended in pursuing the litigation."  *Id.* (quoting *Cook v. Niedert,* 142 F.3d 1004, 1016 (7th Cir. 1998)).

The representative Plaintiffs here have "reviewed multiple drafts of the Complaints," "spent multiple hours of their time reviewing the detailed facts and circumstances of their involvement with MHT and the lender(s) involved in their guarantee transaction," and either attended the fairness hearing to give live testimony or wrote declarations in lieu of live testimony.  (Massey Decl. ¶ 126).  Dr. Melby (Subclass One), Dr. Policarpio (Subclass Two), Dr. Guillot (Subclass Three), and Dr. Patel (Subclass Four) worked to protect the interests of the absent class members during settlement negotiations.  The Court finds that the class benefited from the diligent work of the representative Plaintiffs and concludes that a $2,000 incentive award for each of them is reasonable based on their contributions.  *See also In re Educ. Testing Serv. Praxis Principles of Learning & Teaching, Grades 7-12 Litig.*, 447 F. Supp. 2d 612, 633-34 (E.D. La. 2006) (finding adequate basis to award $2,000 incentive payments to each of the class representatives because they "were involved in initiating the litigation, and were willing to be subjected to discovery and to submit to depositions on behalf of the class").

## VIII.   Conclusion

For the reasons stated above, Class Counsel's Motion is **GRANTED**, and Mr. De Leon's Motion is **DENIED**.  Class Counsel is awarded $2,101,330.43 in attorney's fees and reimbursed $29,341.11 for expenses.  Kirk Morgan is awarded $119,269.50 in attorney's fees and reimbursed $5,075.38 for expenses.  Isaac Tawil is awarded $25,608.33 in attorney's fees and

reimbursed $11,375.25 for expenses.  Representative Plaintiffs are awarded $2,000 each in incentive payments.

      **SO ORDERED**.

      July 5, 2018.

_____
**BARBARA M. G. LYNN**
**CHIEF JUDGE**